# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 4, 2012

No. 11-60146

Lyle W. Cayce
Clerk

In the Matter of:  LINDA TRENETT MCCOY, also known as Linda Trenett Hays,

Debtor

LINDA TRENETT MCCOY,

Appellant

v.

MISSISSIPPI STATE TAX COMMISSION, State of Mississippi,

Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before KING, JOLLY, and WIENER, Circuit Judges.

KING, Circuit Judge:

Linda Trenett McCoy filed for bankruptcy on September 25, 2007, and was granted a discharge by the bankruptcy court pursuant to 11 U.S.C. § 727. McCoy then filed an adversary proceeding in the bankruptcy court against the Mississippi State Tax Commission on December 3, 2008, seeking a declaration that two years of her pre-petition state income tax debts were subject to that discharge.  On motion by the Commission, the bankruptcy court dismissed

No. 11-60146

McCoy's complaint. The bankruptcy court reasoned that because McCoy had failed to timely file her Mississippi income tax returns, her tax filings were not "returns" for the purposes of discharge under the Bankruptcy Code, which requires the filing of a "return" for the discharge of income tax debts. The district court affirmed the judgment of the bankruptcy court. McCoy timely appealed. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 25, 2007, Linda Trenett McCoy ("McCoy") filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Mississippi. McCoy's discharge was granted by the bankruptcy court, pursuant to 11 U.S.C. § 727, on January 23, 2008. On December 3, 2008, McCoy returned to the bankruptcy court to commence a post-discharge adversary proceeding against the Mississippi State Tax Commission ("MSTC"),[1] seeking a declaration that her debt to the State of Mississippi ("Mississippi"), resulting from pre-petition income tax obligations for the 1998 and 1999 tax years, had been discharged in bankruptcy.[2]

MSTC moved to dismiss McCoy's complaint, arguing that because the state income returns filed by McCoy for the 1998 and 1999 tax years were filed late, they did not qualify as "returns" under the definition provided in 11 U.S.C. § 523(a)(*),[3] a provision added to the Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), 119 Stat.

---

[1] MSTC is currently known as the Mississippi Department of Revenue.

[2] McCoy amended her initial complaint three times. In her third and final amended complaint, McCoy sought a declaration that included tax years 1993 through 2000. McCoy and MSTC subsequently entered into an Agreed Order of Dismissal which dismissed the complaint as to the 1993, 1994, 1995, 1996, 1997, and 2000 tax years. Consequently, only McCoy's liabilities for the 1998 and 1999 tax years are at issue in this appeal.

[3] We use an asterisk to cite to this unnumbered hanging paragraph, something we have done in other cases. *See, e.g., In re Miller*, 570 F.3d 633, 637 n.5 (5th Cir. 2009).

No. 11-60146

23, Pub. L. 109-8 (Apr. 20, 2005).[4]  MSTC further argued that because the late-filed returns did not qualify as "returns" for discharge purposes, McCoy's income tax debts to Mississippi cannot be discharged in bankruptcy.  *See* 11 U.S.C. § 523(a)(1)(B)(i) ("A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for a tax . . . with respect to which a return, or equivalent report or notice, if required . . . was not filed or given . . . .").  McCoy countered by arguing MSTC's reading of the statute was incorrect and that the definition of "return" in § 523(a) should be governed by the test outlined in the pre-BAPCPA case of *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1033 (6th Cir. 1999), *cert. denied*, 528 U.S. 810 (1999).

The bankruptcy court agreed with MSTC's interpretation of § 523(a)(*), concluding that because McCoy's filings did not comport with Mississippi's timeliness requirements, they were not "returns" for discharge purposes. Accordingly, the bankruptcy court held that McCoy had failed to properly state a cause of action and dismissed her claim on August 31, 2009.  McCoy appealed the bankruptcy court's decision to the district court, which rejected McCoy's appeal and affirmed the bankruptcy court's decision.  McCoy now appeals the dismissal of her case, arguing that we should adopt the *Hindenlang* test for determining whether filings constitute returns for discharge purposes, that the documents she filed constitute returns under this test, and that her tax debts to Mississippi should be declared discharged.

## II. DISCUSSION

### A. Standard of Review

"We review a district court's affirmance of a bankruptcy court decision by applying the same standard of review to the bankruptcy court decision that the

---

[4] MSTC also raised a sovereign immunity defense that was rejected by the bankruptcy court and is not at issue in this appeal.

No. 11-60146

district court applied." *Barner v. Saxon Mortg. Servs., Inc. (In re Barner)*, 597 F.3d 651, 653 (5th Cir. 2010) (internal quotation marks and citation omitted). We review factual findings for clear error and conclusions of law de novo. *Id.*

The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).[5] "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). The complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Our task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success. *Lone Star Fund*, 594 F.3d at 387 (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). In other words, we look to see whether McCoy's pleadings, including her legal arguments, plausibly state a claim that her tax debt should be discharged pursuant to § 523(a).

**B. Section 523(a) of the Bankruptcy Code**

Section 727 of the Bankruptcy Code permits the discharge of debts in Chapter 7 bankruptcies, but contains several exceptions, including those outlined in § 523. *See* 11 U.S.C. § 727(b) ("Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor

---

[5] Rule 12(b) of the Federal Rules of Civil Procedure is made applicable to bankruptcy cases by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

No. 11-60146

from all debts that arose before the date of the order for relief under this chapter . . .").  In relevant part, § 523 provides that:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>> (1) for a tax or a customs duty—
>>> (A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;
>>> (B) *with respect to which a return*, or equivalent report or notice, *if required*—
>>>> (i) *was not filed or given* . . . .

11 U.S.C. § 523(a)(1)(B)(I) (emphasis added).

Until the passage of BAPCPA, the term "return" was not defined for § 523(a) purposes and so courts relied on a four-part test outlined in *Hindenlang*, 164 F.3d at 1033.[6]  This test, based on the holdings of the Supreme Court cases of *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934), and *Germantown Trust Co. v. Commissioner*, 309 U.S. 304 (1940), was adopted by other courts of appeals.  *See In re Payne*, 431 F.3d 1055, 1057 (7th Cir. 2005); *Moroney v. United States (In re Moroney)*, 352 F.3d 902, 905 (4th Cir. 2003); *United States v. Hatton (In re Hatton)*, 220 F.3d 1057, 1060–61 (9th Cir. 2000).  These cases held that a late-filed tax return that required the government to assess the tax without the tax payer's assistance would not be treated as a "return" for § 523 purposes.  *Payne*, 431 F.3d at 1058; *Moroney*, 352 F.3d at 906; *Hatton*, 220 F.3d at 1061; *Hindenlang*, 164 F.3d at 1035.  These cases, however, dealt with federal income taxes, and the court in *Hindenlang* specifically explained that its holding "d[id]

---

[6] The test is:

> In order for a document to qualify as a return [under § 523]: (1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law.

*Hindenlang*, 164 F.3d at 1033 (internal quotation marks and citation omitted).

5

not address the issue of the definition of return for purposes of § 523(a)(1)(B) when a taxpayer seeks to discharge state, municipal, or other tax liability." *Hindenlang*, 164 F.3d at 1033 n.4.

In 2005, Congress passed BAPCPA to address several problems with the Bankruptcy Code.  *See* H.R. REP. No. 109–31 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 90–92 (explaining that BAPCPA was motivated by four factors: the "recent escalation of consumer bankruptcy filings," the "significant losses . . . associated with bankruptcy filings," the fact that the "bankruptcy system has loopholes and incentives that allow and—sometimes—even encourage opportunistic personal filings and abuse," and "the fact that some bankruptcy debtors are able to repay a significant portion of their debts").  As part of its package of amendments, BAPCPA added a new hanging paragraph to § 523(a) which defined the term "return" for discharge purposes:

> For purposes of this subsection, *the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements).*  Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a)(*) (emphasis added).  In the instant appeal, the Mississippi tax code provides the "applicable nonbankruptcy law (including applicable filing requirements)" for the case at issue.  It provides, in relevant part:

> Returns of individuals, estates, trusts and partnerships shall be filed on or before the fifteenth day of the fourth month following the close of the fiscal year; or if the return is filed on the basis of a calendar year, it shall be filed on or before April 15th of each year.

MISS. CODE ANN. § 27–7–41.  Both parties agree that this provision means that McCoy filed her tax returns for the 1998 and 1999 tax years—due on April 15, 1999, and April 15, 2000, respectively—late.

No. 11-60146

The parties disagree, however, over whether McCoy's failure to comply with Mississippi's filing requirements prevents the filings that she submitted late from being "returns" for bankruptcy discharge purposes. MSTC contends that McCoy's failure to file in the time required under Mississippi's tax law is a failure to satisfy the applicable nonbankruptcy law referenced in § 523(a). This, MSTC argues, means that McCoy's late-filed returns cannot be considered tax returns for bankruptcy discharge purposes under the plain language of the statute.

McCoy disputes this reading of § 523(a)(*). McCoy first observes that this court has previously held that it is "bound to construe the exceptions contained in § 523 of the Bankruptcy Code narrowly and in favor of the debtor." *Boyce v. Greenway (Matter of Greenway)*, 71 F.3d 1177, 1180 n.8 (5th Cir. 1996) (citing *Citizen Bank & Trust Co. v. Case (Matter of Case)*, 937 F.2d 1014, 1024 (5th Cir. 1991)). McCoy then argues that MSTC's reading of § 523(a)(*) would impermissibly render part of the statute superfluous. *See Kawaauhu v. Geiger*, 523 U.S. 57, 62 (1998) ("[W]e are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law."). She observes that a "return" for discharge purposes includes:

> a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a)(*). Section 6020(a) returns are those in which a taxpayer who has failed to file his or her returns on time nonetheless discloses all information necessary for the I.R.S. to prepare a substitute return that the taxpayer can then

sign and submit.  *See* 26 U.S.C. § 6020(a).[7]  In contrast, a § 6020(b) return is one in which the taxpayer submits either no information or fraudulent information, and the I.R.S. prepares a substitute return based on the best information it can collect independently.  *See* 26 U.S.C. § 6020(b).[8]  Because returns submitted under § 6020(b) are, by definition, late and specifically excluded from the definition of returns, McCoy contends that MSTC's interpretation that late filings are not returns under § 523(a)(*) would render this final portion of § 523(a)(*) superfluous.  To avoid this problem, McCoy urges that we employ the pre-BAPCPA, four-part test delineated in *Hindenlang*, 164 F.3d at 1033, to determine whether her late-filed returns qualify as "returns" for discharge purposes.

We find MSTC's interpretation of § 523(a)(*) more convincing.  We have previously explained that "the plain language meaning of the [Bankruptcy] Code should rarely be trumped.  Although the Code at times is 'awkward, and even ungrammatical . . . that does not make it ambiguous.'"  *Miller*, 570 F.3d at 638

---

[7] Section 6020(a) of the Internal Revenue Code provides:

> If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.

26 U.S.C. § 6020(a).

[8] Section 6020(b) of the Internal Revenue Code provides:

> (1) **Authority of Secretary to execute return.**—If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.
> (2) **Status of returns.**—Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

26 U.S.C. § 6020(b).

No. 11-60146

(quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004)).  The plain language interpretation of § 523(a)(*) offered by MSTC comports with this admonition.

MSTC's reading also finds support in the post-BAPCPA holdings of the bankruptcy courts, at least in the context of federal income tax returns.  *Cannon v. United States (In re Cannon)*, 451 B.R. 204, 206 (Bankr. N.D. Ga. 2011) ("The cases that have addressed the impact of the undesignated paragraph added by BAPCPA to define 'return' [in § 523(a)] have concluded that a late return can never qualify as a return unless it is filed under § 6020(a) safe harbor provision. . . .  The reasoning in those cases is persuasive.") (citations omitted); *Links v. United States (In re Links)*, 2009 WL 2966162, Nos. 08–3178, 07–31728, at *5 (Bankr. N.D. Ohio Aug. 21, 2009) ("The definition of 'return' under § 523(a) . . . necessarily encompasses the filing deadlines for submitting returns contained in the Internal Revenue Code so that a late filed return cannot qualify as a return for purposes of a dischargeability determination."); *Creekmore v. Internal Revenue Serv. (In re Creekmore)*, 401 B.R. 748, 751 (Bankr. N.D. Miss. 2008) ("The definition of 'return' in amended § 523(a) apparently means that a late filed income tax return, unless it was filed pursuant to § 6020(a) of the Internal Revenue Code, can never qualify as a return for dischargeability purposes because it does not comply with the 'applicable filing requirements' set forth in the Internal Revenue Code."); *cf. Pansier v. Wisc. Dep't of Revenue*, 2010 WL 4025884, No. 10–C–0550, at *5 (E.D. Wis. Oct. 14, 2010) (observing that § 523(a)(*) strengthens the Seventh Circuit's pre-BAPCPA position that a late-filed, post-assessment tax return cannot qualify as a return for discharge purposes).  In the view of these courts, BAPCPA amended § 523(a) to provide an unambiguous definition of "return," obviating the need to return to the pre-BAPCPA *Hindenlang* test.  While these cases dealt with federal taxes, their reading of the plain language of the statute applies equally well to state taxes.  *See* 11 U.S.C. § 523(a)(*) ("[T]he term 'return' means a return that satisfies the

9

requirements of applicable [state or federal] nonbankruptcy law (including applicable filing requirements)."

In contrast, the *Hindenlang* test was specifically conceived of and applied in the context of federal taxation alone. As we noted above, the *Hindenlang* court itself "d[id] not address the issue of the definition of return for purposes of § 523(a)(1)(B) when a taxpayer seeks to discharge state, municipal, or other tax liability." *Hindenlang*, 164 F.3d at 1033 n.4. Moreover, none of the other courts of appeals cases relying on this pre-BAPCPA test applied it in the context of discharging *state* taxes. *See, e.g.*, *Payne*, 431 F.3d at 1057; *Hatton*, 220 F.3d at 1060–61. We see no need to extend the reach of this test when a plain language reading of § 523(a)(*) gives a clear definition of "return" for both state and federal taxes.

We also find no support for McCoy's position in any post-BAPCPA court of appeals decisions. Most of the courts of appeals which have addressed what qualifies as a return for bankruptcy discharge purposes did so prior to BAPCPA and so have not construed the language of § 523(a)(*). *See, e.g.*, *Colsen v. United States (In re Colsen)*, 446 F.3d 836, 839 (8th Cir. 2006) (noting § 523(a)(*) but not addressing it because the bankruptcy petition was filed before BAPCPA's effective date). The sole exception is *In re Ciotti*, 638 F.3d 276 (4th Cir. 2011). In that case, the Fourth Circuit considered whether a state form reporting federal tax adjustments required to be filed under Maryland law was sufficiently similar to a return to qualify as an "equivalent report or notice" under § 523(a)(1)(B). *Id.* at 278. The court quoted both the language of § 523(a)(*), as well as the *Hindenlang* test, in concluding that this form was indeed a return for bankruptcy discharge purposes. *Id.* at 280–81. But in so holding, the *Ciotti* court said little about the meaning of § 523(a)(*). Moreover, the issue in *Ciotti*—whether the attributes of a particular form make it similar to a return—is different from the issue in the case before us—whether a return that

fails to comply with the applicable state filing requirements is a return. Accordingly, *Ciotti* provides little guidance for the case at hand and does not bolster McCoy's argument.

McCoy tries to counter the absence of precedent for her argument by referring to a notice issued by the I.R.S.'s chief counsel taking the position that reading § 523(a) to "create[] the rule that no late-filed return could qualify as a return" would result in superfluous reading of § 523(a)(*), since all § 6020(b) returns are "always prepared after the due date." I.R.S. Chief Couns. Notice No. CC-2010-016 at 2 (Sept. 2, 2010). The notice also asserts that such a reading would contradict a "special rule for interpreting the Bankruptcy Code" laid out by the Supreme Court: "'[T]his Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-code practice that is not the subject of at least some discussion in the legislative history.'" *Id.* (quoting *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992)).[9] The I.R.S. notice concludes that "[§] 523(a) in its totality does not create the rule that every late-filed return is not a return for dischargeability purposes." *Id.* at 3.

Even leaving aside that the I.R.S. notice is focused on federal and not state taxes, both of the concerns it raises are misplaced in this case. First, the second sentence of § 523(a)(*) is not superfluous if plainly read as an explanation of what kinds of tax filings qualify as "returns." Section 523(a)(*) defines as a return for discharge purposes as a "return the satisfies the requirements of

---

[9] The House Report accompanying BAPCPA explains that § 523(a)(*) was intended

> to provide that a return prepared pursuant to section 6020(a) of the Internal Revenue Code, or similar State or local law, constitutes filing a return (and the debt can be discharged), but that a return filed on behalf of a taxpayer pursuant to section 6020(b) of the Internal Revenue Code, or similar State or local law, does not constitute filing a return (and the debt cannot be discharged).

H.R. REP. No. 109–31 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 167.

applicable nonbankruptcy law (including applicable filing requirements)." 11 U.S.C. § 523(a)(*). Since filings under § 6020 of the Internal Revenue Code are not returns that satisfy "applicable filing requirements," this second sentence simply explains that returns filed pursuant to § 6020(a) do qualify as returns for discharge purposes, while those filed pursuant to § 6020(b) do not. In other words, this second sentence in § 523(a)(*) carves out a narrow exception to the definition of "return" for § 6020(a) returns, while explaining that § 6020(b) returns, in contrast, do not qualify as returns for discharge purposes. Such a reading conforms with the plain language of the text and leaves no portion of § 523(a)(*) superfluous.[10]

Second, there is no indication that such a reading represents a "major change" from pre-BAPCPA policies. As the bankruptcy court in this case explained, "[u]nder § 6020(a) of the [Internal Revenue Code], the Secretary may prepare a 'substitute' return based on *information voluntarily provided by the taxpayer*. In contrast, § 6020(b) of the [Internal Revenue Code] comes into play when there *is little or no cooperation from the taxpayer*." *McCoy v. Miss. State Tax Comm'n (In re McCoy)*, No. 07–02998–EE, 2009 WL 2835258, at *7 (Bankr. S.D. Miss. Aug. 31, 2009) (emphasis added).[11] In passing § 523(a), Congress made clear that "[i]n general, tax claims which are nondischargeable, despite

---

[10] We also note that McCoy does not claim that her returns were "prepared pursuant to [§] 6020(a) . . . *or similar State or local law* . . . ." 11 U.S.C. § 523(a)(*) (emphasis added). McCoy does not point to any Mississippi tax provision analogous to § 6020(a), under which her filings might qualify as returns. Consequently, she cannot rely on this "safe harbor" provision.

[11] As one notable treatise has explained,

[T]he dischargeability of a debtor's tax liability based upon returns prepared by the Internal Revenue Service depends upon the process which resulted in the filing of the return. If the debtor can show that a tax return, report or notice, filed after the IRS filed a substitute return and assessed the tax, served a useful tax purpose, the tax debt should be dischargeable under section 523(a)(1)(B)(i).

4 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 523.07[3][a], at 37 (16th ed. 2011).

a lack of priority, are those to whose staleness the debtor contributed by some wrong-doing or serious fault . . . ." S. REP. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5800.    Congress, when later drafting § 523(a)(*) to differentiate between § 6020(a) and § 6020(b) returns, likely wanted to reward taxpayers who cooperated with the I.R.S.    *See* H.R. REP. No. 109–31 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 92 (explaining that BAPCPA was passed, in part, to address the problem of the "bankruptcy system ha[ving] loopholes and incentives that allow and—sometimes—even encourage opportunistic personal filings and abuse").    All this is consonant with the pre-BAPCPA test's emphasis "'that where a fiduciary, in good faith, makes what it deems the appropriate return, which discloses all of the data from which the tax . . . can be computed,' a proper return has been filed."    *Hindenlang*, 164 F.3d at 1033 (quoting *Germantown Trust Co.*, 309 U.S. at 309).    We see no "major change" from pre-BAPCPA practices by reading § 523(a)(*) to generally exclude late state tax returns from the definition of return for bankruptcy discharge purposes, while differentiating between § 6020(a) and § 6020(b) returns.

In light of all these considerations, we adopt the reading of § 523(a)(*) suggested by MSTC and the bankruptcy courts: Unless it is filed under a "safe harbor" provision similar to § 6020(a), a state income tax return that is filed late under the applicable nonbankruptcy state law is not a "return" for bankruptcy discharge purposes under § 523(a).    McCoy's 1998 and 1999 returns did not comply with the filing requirements of applicable Mississippi tax law and were, therefore, not "returns" for discharge purposes.    Accordingly, McCoy is not entitled to discharge her tax liabilities to Mississippi for the tax years of 1998 and 1999 and has failed to properly state a claim for relief.

### III. CONCLUSION

For all of the foregoing reasons, we AFFIRM the Opinion and Order of the district court affirming the judgment of the bankruptcy court.