In re Mitchell J. WOGOMAN, also known as Mitch Wogoman, and Holly L. Wogoman, formerly known as Holly Mena, Debtors.

Mitchell J. Wogoman and Holly L. Wogoman, Plaintiffs–Appellants,

v.

Internal Revenue Service, Defendant–Appellee.

BAP No. CO–11–084.
Bankruptcy No. 11–11044.
Adversary No. 11–01117.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

July 3, 2012.

Kevin O. Callahan of Callahan Law Firm LLC, Broomfield, CO, for Plaintiffs–Appellants.

Aaron M. Bailey, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for Defendant–Appellee.

Before CORNISH, RASURE, and SOMERS, Bankruptcy Judges.

## OPINION

CORNISH, Bankruptcy Judge.

The question we are asked to decide on appeal is whether the Form 1040 filed by the debtors approximately 17 months after the IRS had determined and assessed their taxes is a return for purposes of exception to discharge. The debtors appeal the bankruptcy court's order determining that their federal income tax liability for tax year 2001 is excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(B)(i).[1] Section 523(a)(1)(B)(i) provides that a debtor is not discharged from any debt for a tax with respect to which a return was not filed. Having reviewed the record and applicable law, we hold the debtors' Form 1040 filed post-assessment is not a return, and affirm the bankruptcy court's order.

## I. BACKGROUND FACTS[2]

Debtors Mitchell J. Wogoman and Holly L. Wogoman (the "Wogomans") filed their petition for Chapter 7 relief on January 20, 2011. On February 18, 2011, they filed their complaint initiating this adversary proceeding against the Internal Revenue Service ("IRS") to determine the dis-

chargeability of their federal income taxes for tax years ending December 31st of 1998, 2000, 2001, 2002, and 2005.

The IRS filed an answer to the Wogomans' complaint on March 21, 2011, and an amended answer on March 25, 2011. In its answer, the IRS stated that the Wogomans had no outstanding tax liability for tax year 2000, and admitted that their tax liabilities for tax years 1998, 2002, and 2005 were dischargeable. Thus, the only disputed issue presented to the bankruptcy court for resolution was whether taxes owed by the Wogomans for the taxable year 2001 were excepted from discharge pursuant to § 523(a)(1)(B)(i) for failure to file a return.

The bankruptcy court entered its discharge order in the bankruptcy case on May 16, 2011. The IRS filed a motion for summary judgment in this adversary proceeding on July 1, 2011, to which the Wogomans did not respond. However, the Wogomans filed their own motion for summary judgment on July 6, 2011, to which the IRS responded on July 20, 2011. The following is a description of the factual circumstances surrounding the 2001 tax liability that gives rise to this dispute.

The Wogomans did not file a return for tax year 2001 by the April 15, 2002 due date, or by the extended due date of August 15, 2002. In October 2003, the Wogomans' tax preparer sent them a letter pointing out they had not filed a return for their federal 2001 income taxes and needed to take action.

The IRS commenced an examination in 2004 to determine the Wogomans' delin-

---

1.  Unless otherwise indicated, all future statutory references in text are to the Bankruptcy Code, Title 11 of the United States Code.

2.  As neither party alleges there are any disputed facts, the following summary is taken from the bankruptcy court's *Order Regarding*

*(1) Defendant's Motion for Summary Judgment Filed on July 1, 2011 (Docket # 15) and (2) Plaintiffs' Motion for Summary Judgment Filed on July 6, 2011 (Docket # 17) ("Order"), in* Appellant's App. at 40.

quent 2001 tax liability. After establishing a proposed tax liability, the IRS issued a statutory notice of deficiency notifying the Wogomans of the deficiency and their right to challenge it in United States Tax Court. The Wogomans did not challenge the deficiency.

On February 21, 2005, the IRS assessed the deficiency for the 2001 taxes. The Wogomans did not pay the assessed liability, but filed a Form 1040 for tax year 2001 on August 1, 2006. The IRS then abated part of the Wogomans' 2001 income tax liability and associated penalties on November 13, 2006. On March 23, 2007, the Wogomans entered into an installment agreement with the IRS to pay the remaining 2001 taxes and penalties, and subsequently made approximately 20 payments under the agreement.

On summary judgment before the bankruptcy court, the IRS argued that, if at the time taxes are assessed no return has been filed, then the debt recorded by the assessment is a debt with respect to which no return has been filed and § 523(a)(1)(B)(i) excepts it from discharge. The Wogomans argued that the express statutory language of § 523(a)(1)(B)(i) does not require that a return be filed prior to assessment in order to be effective for dischargeability purposes. Based on the pleadings, the bankruptcy court entered its order on August 19, 2011, ruling that the 2001 tax debt "is nondischargeable because it came into existence prior to the filing of the Form 1040 by the Wogomans in 2006."[3] The

Wogomans timely filed a notice of appeal with this Court on September 1, 2011.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[4] Neither party elected to have this appeal heard by the United States District Court for the District of Colorado. The parties have therefore consented to appellate review by this Court.

A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[5] In this case, the order and judgment of the bankruptcy court determining the Wogomans' 2001 tax liability was not dischargeable terminated the adversary proceeding. Nothing remains for the bankruptcy court's consideration. Thus, the decision is final for purposes of review.

## III. STANDARD OF REVIEW

A ruling on summary judgment is reviewed *de novo*, applying the same legal standard used by the bankruptcy court.[6] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] "In reviewing a summary judgment motion, the court is to view the rec-

---

3. *Order* at 10, *in* Appellant's App. at 49.

4. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–3.

5. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

6. *Kojima v. Grandote Int'l Ltd. Liability Co. (In re Grandote Country Club Co., Ltd.)*, 252 F.3d 1146, 1149 (10th Cir.2001).

7. Fed.R.Civ.P. 56(a).

ord 'in the light most favorable to the nonmoving party.' " [8]

■ The facts of this case are undisputed. The Wogomans appeal the bankruptcy court's interpretation of § 523(a)(1)(B)(i). Thus, only a legal issue is presented on appeal. Legal questions are reviewed *de novo*.[9] *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[10]

## IV. ANALYSIS

At issue in this appeal is interpretation of the exception to discharge for taxes described in § 523(a)(1)(B)(i), which provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 8(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

. . .

(B) with respect to which a return, or equivalent report or notice, if required—

(i) was not filed or given[.] [11]

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added language relevant to this exception in a "hanging paragraph" that follows § 523(a)(19). The hanging paragraph, which purports to define the term "return," provides:

For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable non-bankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.[12]

Section 6020(a) of the Internal Revenue Code ("IRC") refers to a return prepared by the IRS with the assistance of the taxpayer, and when signed by the taxpayer, may be treated as a return filed by the taxpayer.[13] On the other hand, IRC § 6020(b) refers to a return prepared by

---

**8.** *Grandote*, 252 F.3d at 1149 (quoting *Thournir v. Meyer*, 909 F.2d 408, 409 (10th Cir. 1990)).

**9.** *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

**10.** *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

**11.** 11 U.S.C. § 523(a)(1)(B)(i).

**12.** 11 U.S.C. § 523(a)(*) (hanging paragraph).

**13.** Technically, the IRC authorizes the Secretary of the Treasury to prepare the return, which is accomplished through the IRS. Subsection (a) of § 6020, "Returns prepared for or executed by Secretary," provides:

(a) Preparation of return by Secretary.—If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.

26 U.S.C. § 6020(a). Generally speaking, § 6020(a) acts as a "taxpayer assistance procedure." *See* Michael I. Saltzman & Leslie Book, *IRS Practice and Procedure* ¶ 4.02[1][a] (2012). It should be noted that in conjunction with a return prepared under § 6020(a), the taxpayer typically agrees to immediate assessment and collection of the taxes shown on the return. *See IRS Chief Counsel Advisory 200113026*, 2001 WL 307745 (Mar. 30, 2001).

the IRS without the assistance of the taxpayer and executed by the IRS.[14]

The question presented on appeal here is whether the Wogomans' 2001 tax liability is a tax for which no return was filed within the meaning of § 523(a)(1)(B)(i). Because the 2001 Form 1040 filed by the Wogomans in August 2006 was not filed pursuant to IRC § 6020(a) or (b), the second sentence of the hanging paragraph is not relevant in this case.[15] However, the first sentence of the hanging paragraph, which purportedly defines the term "return," is applicable here, and arguably changes the analysis conducted by courts pre-BAPCPA when addressing this dischargeability exception on facts similar to those before us.

On appeal, the Wogomans argue, like they did before the bankruptcy court, that the "express language of § 523(a)(1)(B)(i) does not distinguish between returns filed pre-assessment and those filed post-assessment," and the "Court should not read into Section 523(a)(1)(B) the requirement that a debtor must have filed a return prior to an assessment by the IRS" in order for taxes to be dischargeable.[16] Instead, they assert that the bankruptcy court should have employed a four-pronged test formulated by courts pre-BAPCPA. Further, they assert that under such test, the 2001 Form 1040 they filed in August 2006 constitutes a return, thus rendering their 2001 tax liability dischargeable.[17] The IRS argues that BAPCPA's hanging paragraph excludes from the definition of return any return that does not satisfy the requirements of applicable nonbankruptcy law (including applicable filing requirements), and that "[r]eturns filed late, *after the assessment by the government,* simply do not satisfy the applicable requirements of the Internal Revenue Code."[18] Further, the IRS argues that even if the pre-BAPCPA four-pronged test is utilized, the Wogomans' 2001 tax liability *is still not dischargeable because the Form 1040 they filed cannot meet all four requirements.*[19]

Additionally, following the bankruptcy court's decision in this case, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") issued its opinion in *In re McCoy.*[20] In *McCoy,* the Fifth Circuit interpreted the first sentence of the hanging paragraph added by BAPCPA to mean that a "late-filed" tax return, even if

---

**14.** Subsection (b) of § 6020 provides:

> (b) Execution of return by Secretary.—
> (1) Authority of Secretary to execute return.—If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.
> (2) Status of returns.—Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

26 U.S.C. § 6020(b). This provision has been described as a "collection device" because it is an administrative step that permits the IRS to begin the process of assessing and collect-

ing the unpaid tax. *See* Saltzman & Book, *supra* note 13, ¶ 4.02[1][a].

**15.** Additionally, in its brief, the IRS explains that its determination of the Wogomans' 2001 tax liability was not done pursuant to IRC § 6020(b), but by another authorized deficiency procedure. *See* Appellee's Brief at 13–14, nn. 9 & 10.

**16.** Appellant's Opening Brief at 8.

**17.** *Id.* at 9.

**18.** Appellee's Brief at 12.

**19.** *Id.* at 8–11.

**20.** *In re McCoy,* 666 F.3d 924 (5th Cir.2012), *petition for cert. filed,* 80 U.S.L.W. 3680 (U.S. Apr. 2, 2012) (No. 11–1469).

filed prior to assessment of the taxes by the taxing authority, is not a return for purposes of § 523(a)(1)(B)(i), unless it falls within the "safe harbor" created for returns filed pursuant to IRC § 6020(a) or similar state or local law provision.[21] As a result, we are presented with at least three alternative prescriptions for determining whether the tax liability at issue here is dischargeable. We describe the three alternatives below, and conclude that regardless of which one is applied to the facts, we are compelled to affirm the bankruptcy court's order excepting the Wogomans' 2001 tax liability from discharge.

## A. Pre–BAPCPA Standard of Honest and Reasonable Compliance

■ Prior to BAPCPA, the majority of courts presented with cases similar to the one on appeal here held that the debtors' tax liabilities were not dischargeable because the returns filed by debtors after assessment of the taxes by the IRS did not qualify as returns for purposes of § 523(a)(1)(B)(i).[22] However, the analysis conducted by those courts did not focus on the mere fact that the returns had been filed post-assessment. Instead, the courts utilized a four-pronged test first employed in the bankruptcy dischargeability context by the United States District Court for the Southern District of Ohio and the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") in *In re Hindenlang*.[23] That test sets forth four requirements that must be met in order for a document to qualify as a return:

"(1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law." [24]

The test was originally formulated by the United States Tax Court in *Beard v. Commissioner*[25] by combining the principles from two United States Supreme Court cases, *Germantown Trust Co. v. Commissioner*[26] and *Zellerbach Paper Co. v. Helvering*,[27] and thus is often referred to as

21. *Id.* at 932.

22. The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has not addressed this issue. In *In re Bergstrom*, 949 F.2d 341 (10th Cir.1991), the Tenth Circuit held that a substitute for return filed by the IRS is not a return for purposes of § 523(a)(1)(B). However, the Tenth Circuit did not hold, as the bankruptcy court below stated in its Order, that "Forms 1040 submitted only after the filing of a substitute return by the IRS and an assessment of tax by the IRS do not constitute returns under § 523(a)(1)(B)(i)." *Order* at 9, *in* Appellant's App. at 48 (emphasis omitted). The facts in *Bergstrom* simply did not involve a Form 1040 filed by the taxpayer.

23. *In re Hindenlang*, 214 B.R. 847 (S.D.Ohio 1997), *rev'd*, 164 F.3d 1029 (6th Cir.1999).

24. 164 F.3d at 1033 (quoting *Hindenlang*, 214 B.R. at 848).

25. 82 T.C. 766, 778–79, 1984 WL 15573 (1984), *aff'd*, 793 F.2d 139 (6th Cir.1986) (filing of tampered form was not an honest endeavor to satisfy the law but a conspicuous protest against payment of tax intended to deceive).

26. 309 U.S. 304, 309–10, 60 S.Ct. 566, 84 L.Ed. 770 (1940) (even if incorrect form is used, an appropriate return filed in good faith which discloses data from which tax can be computed is a proper return that triggers running of the statute of limitations period for assessing a deficiency).

27. 293 U.S. 172, 180, 55 S.Ct. 127, 79 L.Ed. 264 (1934) (document that purports to be a return, is sworn to as such, and evinces an honest and genuine endeavor to satisfy the law will trigger running of limitations period for deficiency assessment even if not perfectly accurate or complete).

the *"Beard* test." The critical requirement in the context of the dischargeability exception for taxes is whether there has been an honest and reasonable attempt to satisfy the requirements of the tax law.

The facts addressed by the Sixth Circuit in *Hindenlang* were very similar to those presented in this case. In *Hindenlang,* the debtor did not file income tax returns for several tax years. The IRS filed substitutes for the returns and assessed the taxes. About two years after assessment, the debtor filed his Forms 1040 for the tax years at issue, calculating his tax substantially the same as in the IRS return substitutes.[28] Several years later, the debtor filed a Chapter 7 petition and then instituted an adversary proceeding seeking a determination on the dischargeability of his tax liabilities.[29] Applying the *Beard* test, the Sixth Circuit concluded the first three requirements were met, but that the IRS had met its burden of proving by a preponderance of the evidence that the fourth requirement was not:

> We hold as a matter of law that a Form 1040 is not a return if it no longer serves any tax purpose or has any effect under the Internal Revenue Code. A purported return filed too late to have any effect at all under the Internal Revenue Code cannot constitute "an honest and reasonable attempt to satisfy the requirements of the tax law." Once the government shows that a Form 1040 submitted after an assessment can serve no purpose under the tax law, the government has met its burden.[30]

Accordingly, the Sixth Circuit held that the Forms 1040 filed by debtor after the IRS had assessed the taxes were not re-

turns for purposes of § 523(a)(1)(B)(i), and therefore the debtor's tax liabilities were not dischargeable.

Following the Sixth Circuit's utilization of the *Beard* test in the dischargeability exception context, other circuit courts followed suit. In *In re Moroney,*[31] the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") was presented with facts materially indistinguishable from those in *Hindenlang* and on appeal here. Like the Sixth Circuit, the Fourth Circuit held that the debtor's taxes were not dischargeable because he could not meet the fourth requirement of the *Beard* test. In reaching its result, the Fourth Circuit opined:

> We agree with the weight of authority that a debtor's delinquency is relevant to determining whether the debtor has filed a return. The very essence of our system of taxation lies in the self-reporting and self-assessment of one's tax liabilities. Timely filed federal income tax returns are the mainstay of that system. A reporting form filed after the IRS has completed the burdensome process of assessment without any assistance from the taxpayer does not serve the basic purpose of tax returns: to self-report to the IRS sufficient information that the returns may be readily processed and verified. Simply put, to belatedly accept responsibility for one's tax liabilities, only when the IRS has left one with no other choice, is hardly how honest and reasonable taxpayers attempt to comply with the tax code.[32]

In response to the debtor's argument that his honesty and reasonableness were relevant only to § 523(a)(1)(C), which ex-

---

**28.** *Hindenlang,* 164 F.3d at 1031.

**29.** *Id.*

**30.** *Id.* at 1034.

**31.** *Moroney v. United States (In re Moroney),* 352 F.3d 902 (4th Cir.2003).

**32.** *Id.* at 906 (citations omitted).

cepts taxes with respect to which the debtor has made a fraudulent return or willfully attempted to evade or defeat such tax, the Fourth Circuit replied:

> Section 523(a)(1)(B)(i)'s filing requirement governs debtors precisely like Moroney: debtors whose inaction or inaccuracy, even if not sufficiently malodorous to be deemed fraudulent or evasive, disqualifies them from the fresh start that bankruptcy provides. The Bankruptcy Code allows honest debtors to discharge the taxes they cannot pay. It does not permit them to discharge the obligation owed by all taxpayers, whatever their financial condition, to file timely returns. Debtors like Moroney cannot seek the safe haven of bankruptcy by failing to file tax returns, waiting to see if the IRS assesses taxes on its own, and then submitting statements long after the IRS has been put to its costly proof.[33]

The Fourth Circuit held the debtor had failed to file "a return in any meaningful sense of that word," and therefore his taxes could not be discharged.[34] The *Beard* test has also been employed by two other circuit courts to reach the same results in similar situations.[35]

However, when the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit") was presented with this issue on analogous facts, it reached the opposite result. In *In re Colsen*,[36] the Eighth Circuit employed the *Beard* test, but diminished the fourth requirement. Emphasizing that exceptions to discharge must be strictly construed, the Eighth Circuit declared "that the honesty and genuineness of the filer's attempt to satisfy the tax laws

should be determined from the face of the form itself, not from the filer's delinquency or the reasons for it. The filer's subjective intent is irrelevant."[37] Accordingly, even though debtor had filed his returns several years after the taxes had been assessed by the IRS, the Eighth Circuit held his tax liabilities were dischargeable. However, we find the reasoning of the other circuit courts, i.e., that delinquency is relevant to an honest and reasonable attempt to satisfy tax law, more persuasive.

In their opening brief, the Wogomans argue the bankruptcy court should have applied the *Beard* test, and that the Form 1040 for tax year 2001 they filed in August 2006 meets all four requirements. According to the Wogomans, "[a]fter years of not realizing there was any problem or issue with their 2001 tax return [they hired] several tax professionals to assist them in the filing of the return and the correction of the non-filing once they learned of it, [evincing] an honest and genuine endeavor to satisfy the law."[38] We are not persuaded, however, that the Wogomans "did not realize there was a problem with their 2001 return." The Wogomans' argument that there was not a problem with a 2001 return they filed some four years late simply defies logic. They chose to ignore the obvious warning signs and have only themselves to blame.

In ruling on the summary judgment motions, the bankruptcy court was presented with the following relevant undisputed material facts that are not challenged on appeal: 1) the Wogomans' tax preparer sent them a letter in October 2003 noting that

---

**33.** *Id.* at 907.

**34.** *Id.*

**35.** *See In re Hatton,* 220 F.3d 1057 (9th Cir. 2000); *In re Payne,* 431 F.3d 1055 (7th Cir. 2005).

**36.** *In re Colsen,* 446 F.3d 836 (8th Cir.2006).

**37.** *Id.* at 840.

**38.** Appellant's Brief at 9.

they had not filed a tax return for the 2001 tax year and needed to take action; and 2) the IRS commenced examination of the Wogoman's 2001 tax liability in 2004, sent them a statutory notice of deficiency, and then assessed the taxes in February 2005. To believe the Wogomans' incredulous assertion that they were not aware of the problem until after the IRS assessed the 2001 tax liability would necessitate that we essentially ignore the facts. Thus, even if the *Beard* test is applicable to this dischargeability exception post-BAPCPA, the 2001 return filed by the Wogomans in August 2006 does not meet the fourth requirement of this test, i.e., it does not represent an honest and reasonable attempt to satisfy the requirements of the tax law.

## B. All Late–Filed Returns Excepted from Discharge

As discussed above, the hanging paragraph added by BAPCPA provides:

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable non-bankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.[39]

Each of the two sentences in this paragraph appears quite straightforward when standing alone. However, when the two are read together, we are not convinced, as some other courts are, that the precise meaning and effect of the hanging paragraph is clear.

In *In re McCoy*, the Fifth Circuit interpreted and applied § 523(a)(1)(B)(i) and the hanging paragraph language to a debtor's state income tax liabilities relating to late-filed returns.[40] As described by the *McCoy* bankruptcy court in its unpublished opinion, the debtor contended she filed income tax returns for tax years 1998 and 1999 on September 11, 2002, and thereafter, the taxes were assessed by the Mississippi State Tax Commission ("MSTC") on September 17, 2002.[41] The MSTC argued the debtor's "late-filed returns" did not qualify as returns under the § 523(a) hanging paragraph definition, and thus her taxes were not dischargeable. The debtor argued the *Beard* test adopted by the *Hindenlang* court should be applied to determine whether her filings were returns, notwithstanding that the *Hindenlang* court specifically stated its holding "d[id] not address the issue of the definition of return for purposes of § 523(a)(1)(B) when a taxpayer seeks to discharge state, municipal, or other tax liability." [42]

In response to debtor's argument that the *Beard/Hindenlang* test should be applied, the Fifth Circuit was persuaded by several bankruptcy courts, which have concluded in the federal income tax context that "BAPCPA amended § 523(a) to pro-

**39.** 11 U.S.C. § 523(a)(*) (hanging paragraph).

**40.** *In re McCoy,* 666 F.3d 924 (5th Cir.2012), *petition for cert. filed,* 80 U.S.L.W. 3680 (U.S. Apr. 2, 2012) (No. 11–1469).

**41.** *McCoy v. Miss. State Tax Comm'n (In re McCoy),* No. 08–00175, 2009 WL 2835258 (Bankr.S.D.Miss.2009). The Mississippi Code

requires that income tax returns of calendar year taxpayers be filed on or before April 15th of each year. *See* Miss.Code Ann. § 27–7–41.

**42.** *McCoy,* 666 F.3d at 927 (quoting *Hindenlang,* 164 F.3d 1029, 1033 n. 4 (6th Cir. 1999)).

vide an unambiguous definition of 'return,' obviating the need to return to the pre-BAPCPA *Hindenlang* test." [43] Further, the Fifth Circuit found that "their reading of the plain language of the statute applies equally well to state taxes." [44] The Fifth Circuit held that because debtor's returns were filed late, they "did not comply with the filing requirements of applicable Mississippi tax law and were, therefore, not 'returns' for discharge purposes." [45] Accordingly, debtor was not entitled to discharge her state income tax liabilities.

We agree that the statutory language defining a return to mean that "applicable filing requirements" must be satisfied is susceptible to the construction that a late-filed return is not a return for purposes of dischargeability. However, harmonization of that interpretation with the second sentence of the hanging paragraph is problematic. The second sentence provides in part that the term "return" includes a return prepared pursuant to § 6020(a) of the IRC "or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal." [46] As a result, in *McCoy* the Fifth Circuit (again persuaded by the decisions of several bankruptcy courts) concluded that Congress carved out a "safe harbor" for returns filed under IRC § 6020(a) or a

similar provision. [47] But neither the Fifth Circuit's decision, nor the bankruptcy court decisions it cites, offer a satisfactory explanation for why Congress allegedly "carves out a narrow exception to the definition of 'return' for § 6020(a) returns." [48] The courts championing this construction of the statute primarily proffer that it "conforms with the plain language of the text and leaves no portion of § 523(a)(*) superfluous." [49]

Our own research has uncovered nothing to support the conclusion that the hanging paragraph was intended to create the rule that a late-filed federal income tax return can never lead to discharge unless it falls within the safe harbor, i.e., is prepared pursuant to IRC § 6020(a) or similar provision. [50] Additionally, in 2010, the IRS issued a Chief Counsel Notice setting forth its litigation position regarding dischargeability of tax liabilities reported on late-filed returns and returns filed after assessment. [51] In the Notice, the IRS commented that it prepares a return for the taxpayer's signature under § 6020(a) in only a minute number of cases, and further that any supposed "safe harbor" under § 6020(a) is illusory because taxpayers have no right to demand that the IRS prepare a return for them under that provision. [52]

**43.** *McCoy,* 666 F.3d at 929 (citing *Cannon v. United States (In re Cannon),* 451 B.R. 204, 206 (Bankr.N.D.Ga.2011); *Links v. United States (In re Links),* Nos. 08–3178, 07–31728, 2009 WL 2966162, at *5 (Bankr.N.D.Ohio Aug. 21, 2009); *Creekmore v. Internal Revenue Serv. (In re Creekmore),* 401 B.R. 748, 751 (Bankr.N.D.Miss.2008)).

**44.** *Id.*

**45.** *Id.* at 932.

**46.** 11 U.S.C. § 523(a)(*) (hanging paragraph).

**47.** *McCoy,* 666 F.3d at 932. *See also Cannon,* 451 B.R. at 206; *Links,* 2009 WL 2966162, at *5; *Creekmore,* 401 B.R. at 751.

**48.** *McCoy,* 666 F.3d at 931.

**49.** *Id.*

**50.** For a thorough discussion of the many statutory construction issues related to the hanging paragraph, *see* Morgan D. King, *Tolstoy, Discharging Taxes, and the Fifth Circuit,* 4 Norton Bankr.L. Adviser 3 (April 2012).

**51.** *IRS Chief Counsel Notice* CC–2010–016, 2010 WL 3617597 (Sept. 10, 2010).

**52.** *Id.*

■ Fortunately, we do not have to conclusively define the boundaries of the hanging paragraph in this case because it does not involve a tax return that was merely filed "late." Here, we are presented with debtors, who without any reason justifying the delay, did not file their 2001 return until August 2006, after the IRS had completed the burdensome process of determining their tax liability, providing the statutory notice of deficiency, assessing the taxes, and attempting collection. Regardless of whether the hanging paragraph creates a much more restrictive rule than the *Beard* test developed by courts pre-BAPCPA, the 2001 return filed by the Wogomans' post-assessment does not meet applicable filing requirements, and therefore, their 2001 tax liability is excepted from discharge.

### C. IRS Position that Only Tax Debt Assessed Prior to Filing of Return is Excepted from Discharge

In its brief, the IRS asserts that "[w]hile the *McCoy* court correctly noted that the BAPCPA flush language makes a *Hindenlang*-type analysis unnecessary, it goes too far by not distinguishing between returns filed prior to assessment and those filed only after assessment, thus thwarting the purpose of [the statute] which provides for the discharge of some late-filed returns." [53]

The IRS argues that interpreting the statute in the same manner as the *McCoy* court "would lead to the overly harsh result that taxpayers who filed even a day late, and prior to any expenditure of resources by the government, would not be entitled to a discharge." [54] The IRS relies on the 2010 IRS Chief Counsel Notice described above, which states that read as a whole, § 523(a) does not provide that every tax for which a return was filed late is nondischargeable, and whether a return is filed after assessment should be the critical inquiry. [55]

The IRS's position that assessment is the proper dividing line is based on its statutory interpretation of the language of § 523(a)(1)(B)(i) alone, without resort to the hanging paragraph. Section 523(a)(1)(B)(i) excepts from discharge any debt for a tax with respect to which a return was not filed. According to the IRS, because the act of assessment creates or records a "debt" for the assessed taxes that is legally enforceable by lien or levy, [56] if a return has not been filed prior to assessment, the tax liability cannot be discharged. [57] From a tax policy perspective, the IRS's position is logical and simple to administer. However, the IRS argued this position prior to BAPCPA as well, and to our knowledge, no court has adopted this interpretation of § 523(a)(1)(B)(i). [58] And again, as to the result in this case, it

53. Appellee's Brief at 15.

54. *Id.* at 16.

55. *IRS Chief Counsel Notice* CC–2010–016, 2010 WL 3617597.

56. *See* 26 U.S.C. § 6203 ("assessment shall be made by recording the liability of the taxpayer in the office of the Secretary"); *Bull v. United States,* 295 U.S. 247, 260, 55 S.Ct. 695, 79 L.Ed. 1421 (1935) ("assessment supersedes the pleading, proof, and judgment necessary in an action at law, and has the force of such a judgment").

57. *IRS Chief Counsel Notice* CC–2010–016, 2010 WL 3617597.

58. In fact, this Court rejected such an argument in *Savage v. IRS (In re Savage),* 218 B.R. 126 (10th Cir. BAP 1998), and held that tax liabilities associated with returns filed post-assessment could be discharged. It should be noted, however, that we did not analyze the returns in *Savage* under the *Beard* test because: 1) that case predated the decision of the Sixth Circuit in *Hindenlang;* and 2) the IRS, the party with the burden of proving debtor's taxes to be nondischargeable, did not raise the argument before the bankruptcy court. As a result, such analysis involved

matters not whether we adopt the Fifth Circuit's interpretation of the § 523(a) hanging paragraph in *McCoy* or the assessment rule advocated by the IRS. Under either alternative, the Wogomans' 2001 tax liability is excepted from discharge.[59]

## V. CONCLUSION

The goal of bankruptcy is to give the honest but unfortunate debtor a fresh start, but the law has always provided that certain debts cannot be discharged. Section 523(a)(1)(B)(i) excepts from discharge any debt for a tax with respect to which a return was not filed, and the § 523(a) hanging paragraph provides that "the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)." The Wogomans filed their 2001 Form 1040 in August 2006, some 17 months after the IRS had assessed the taxes, and provide no justifiable reason for the delay. Under any of the three alternative interpretations of the statute discussed above, the Wogomans' 2001 tax liability is excepted from discharge.[60] Therefore, we affirm the bankruptcy court's order.

---

factual inquiries beyond the scope of the appellate record, and we were prevented from addressing the *Beard* test in that case. *See Savage,* 218 B.R. at 132–33.

**59.** Several bankruptcy courts have recently taken this approach and expressed similar sentiments. *See Smythe v. United States (In re Smythe),* No. 11–04077, 2012 WL 843435 (Bankr.W.D.Wash. Mar. 12, 2012) (court need not resolve differences between *McCoy* and the IRS's position because debtors clearly failed to satisfy applicable filing requirements when returns were filed post-assessment); *Casano v. IRS (In re Casano),* 473 B.R. 504 (Bankr.E.D.N.Y.2012) (court need not address the issue of whether any late filed Form 1040 would always result in the tax debt being nondischargeable where returns were filed after assessment).

**60.** However, in its brief, the IRS states that if a taxpayer files a post-assessment Form 1040 that reports an additional amount of tax (over and above the tax assessed), the portion of the tax not previously assessed may be dischargeable. Accordingly, the IRS stipulates that Holly Wogoman's 2001 federal income tax debt, to the extent it exceeds the amount assessed prior to submission of the 2001 Form 1040 is dischargeable. Appellee's Brief at 16–17.