Anthony M. GONZALEZ, Debtor.

Anthony M. Gonzalez, Plaintiff–
Appellee,

v.

Massachusetts Department of Revenue,
Defendant–Appellant.

BAP No. MW 13–026.
Bankruptcy No. 10–41907–MSH.
Adversary No. 11–04149–MSH.

United States Bankruptcy Appellate Panel
of the First Circuit.

March 6, 2014.

Daniel J. Hammond, Esq., Boston, MA, Celine E. Jackson, Esq., and Jeffrey S. Ogilvie, Esq., Redding, CA, on brief, for Defendant–Appellant.

Marques C. Lipton, Esq. and Timothy M. Mauser, Esq., on brief for Plaintiff–Appellee.

Before DEASY, CABÁN, and FINKLE, United States Bankruptcy Appellate Panel Judges.

CABÁN, Bankruptcy Judge.

Massachusetts Department of Revenue (the "MDOR") appeals from a bankruptcy court determination that certain state income tax liabilities of the debtor, Anthony M. Gonzalez (the "Debtor"), were dischargeable, even though his corresponding tax returns were filed late. For the reasons discussed below, we **AFFIRM.**

## BACKGROUND

The material facts are not in dispute. On February 28, 2005, the Debtor filed his Massachusetts resident income tax returns for each of the tax years 1999 through 2002. On July 19, 2005, he filed his returns for tax years 2003 and 2004. All were overdue, although filed prior to any assessment[1] by the Commissioner of Rev-

---

1. Massachusetts law defines an "assessment" as:

   [T]he process of the Department of Revenue's determination or verification of the amount of tax, as provided under M.G.L. c. 62C, §§ 24, 25, and 26, imposed and due from a taxpayer under M.G.L. chs. 60A; 62 through 64J; 65B and 65C; M.G.L. c. 121A, § 10; M.G.L. c. 138, § 21; and the entry of the amount of the tax due in the Commissioner's assessment records; or the taxpayer's calculation and declaration of the tax due, as provided under M.G.L. c. 62C, § 26(a), completed in full on a return, including any amendment, correction, or supplement thereto, by the taxpayer or the taxpayer's representative and duly filed with the Commissioner.

   830 Mass.Code Regs. 62C.26.1(2).

enue.[2]

Approximately five years later, on April 19, 2010, the Debtor filed a voluntary petition for chapter 7 relief. On his Schedule E, the Debtor listed outstanding tax indebtedness to the MDOR for the years 1999 through 2004, totaling $36,174.80. On September 23, 2010, he received a discharge of his debts pursuant to § 727.[3]

In November 2011, the Debtor commenced an adversary proceeding against the MDOR with a single-count complaint, seeking a determination that his prepetition state income tax liabilities had been discharged pursuant to the discharge order entered in his chapter 7 case. After filing an answer, the MDOR moved for summary judgment, arguing that the subject income tax liabilities were not discharged as a matter of law. The MDOR's theory was that the Debtor's late-filed income tax returns did not qualify as "returns" for purposes of § 523(a), and that

§ 523(a)(1)(B)(i) renders nondischargeable tax liabilities for which a return was not filed. At the crux of the MDOR's argument was the language of BAPCPA's "hanging paragraph," which states:

> For purposes of this subsection, the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986,[4] or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986,[5] or a similar State or local law.

11 U.S.C. § 523(*) (footnotes added).[6]

The MDOR relied on certain cases which have held that the definition of "re-

---

**2.** Although the record includes a Failure to File Notice issued by the MDOR to the Debtor for the 2001 tax year which sets forth a proposed assessment in the amount of $14,768.96, the MDOR does not challenge the bankruptcy court's finding or the Debtor's assertion below and on appeal that all of the subject returns in this case were filed pre-assessment. We therefore accept this fact as undisputed.

**3.** Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure.

**4.** Section 6020(a) of the Internal Revenue Code provides:
> **(a) Preparation of return by Secretary.** If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the

preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.
> 26 U.S.C. § 6020(a).

**5.** Section 6020(b)(1) of the Internal Revenue Code provides:
> **(b) Execution of return by Secretary.**
> (1) **Authority of Secretary to execute return.** If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.
> 26 U.S.C. § 6020(b)(1).

**6.** Courts use an asterisk to denote this unnumbered, "hanging paragraph" which is inserted immediately after § 523(a)(19), a practice which we adopt.

turn" in amended § 523 means that a late-filed federal income tax return, unless filed pursuant to 26 U.S.C. § 6020(a) of the Internal Revenue Code, can never qualify as a return for dischargeability purposes because it does not comply with the applicable filing requirements. *See, e.g., Shinn v. Internal Revenue Serv. (In re Shinn)*, Adv. No. 10–8139, 2012 WL 986752 (Bankr.C.D.Ill. Mar. 22, 2012); *Hernandez v. United States (In re Hernandez)*, Adv. No. 11–5126–C, 2012 WL 78668 (Bankr. W.D.Tex. Jan. 11, 2012); *Cannon v. United States (In re Cannon)*, 451 B.R. 204 (Bankr.N.D.Ga.2011); *Links v. United States (In re Links)*, No. 08–3178, 2009 WL 2966162 (Bankr.N.D.Ohio Aug. 21, 2009); *Creekmore v. Internal Revenue Serv. (In re Creekmore)*, 401 B.R. 748 (Bankr.N.D.Miss.2008). The MDOR also cited *McCoy v. Miss. State Tax Comm'n*, 666 F.3d 924 (5th Cir.2012), for the same principle, in the context of state income tax returns. The MDOR argued that BAPC-PA's definition of "return" abrogated the common law test for determining whether a document filed with the Internal Revenue Service ("IRS") qualified as a "return" for tax purposes set forth in *Beard v. Comm'r*, 82 T.C. 766, 774–79 (1984), *aff'd*, 793 F.2d 139 (6th Cir.1986). *See Creekmore, supra*. According to the MDOR, to be considered a return for discharge purposes post-BAPCPA, the return must comply with applicable requirements of non-bankruptcy law, namely, Mass. Gen. Laws ch. 62C, § 6(c), requiring that state tax returns be made on or before the fifteenth day of the fourth month following the close of each taxable year. In other words, the MDOR contends that if the return is filed late, it is tantamount to noncompliance which results in a nondischargeable tax debt unless filed under 26 U.S.C. § 6020(a) or its state law equivalent. Hence, the Debtor did not file a "return" for the applicable years because he failed to file the returns on time.

The Debtor countered that a late return is nonetheless a return under the plain language of the definition of a return in the Bankruptcy Code and reiterated that his income tax debts for the applicable years were discharged under § 727. He contended that even the § 523(a)(1)(B)(ii) exception, which explicitly excludes from discharge returns filed late and within two years of the filing of the bankruptcy case, was inapplicable here because he filed all of his required returns more than two years prior to his chapter 7 petition. The Debtor urged the bankruptcy court to reject *McCoy* and cases similarly decided, arguing that a conclusion that a late return is not a return for dischargeability purposes would render § 523(a)(1)(B)(ii) "superfluous." Instead, the Debtor advanced the approach advocated by the IRS in analogous cases involving federal income taxes: "A late filed return will not render a tax non-dischargeable under [§] 523 unless the taxing authority assesses a tax against the taxpayer prior to the filing of the return." *See, e.g., Wogoman v. Internal Revenue Serv. (In re Wogoman)*, 475 B.R. 239 (10th Cir. BAP 2012); *Casano v. Internal Revenue Serv. (In re Casano)*, 473 B.R. 504 (Bankr.E.D.N.Y.2012); *Smythe v. United States (In re Smythe)*, Adv. No. 11–04077, 2012 WL 843435 (Bankr.W.D.Wash. Mar. 12, 2012). The Debtor maintained that this approach was less harsh, would preserve the meaning of § 523(a)(1)(B)(ii), and would further the Code's fresh start objective.

After conducting a hearing on the summary judgment motion in July 2012, the bankruptcy court took the matter under advisement. In December 2012, the bankruptcy court ordered the parties to file supplemental memoranda regarding the effect of a late-filed Massachusetts income

tax return under state law.[7] In its supplemental memorandum filed January 31, 2013, the MDOR stated that a late-filed Form–1 Massachusetts resident income tax return has the following effects under Massachusetts law: (1) the imposition of a penalty pursuant to Mass. Gen. Laws ch. 62C, § 33(a) and/or § 28; (2) the imposition of interest pursuant to Mass. Gen. Laws ch. 62C, § 32(a); and (3) the creation of an assessment, either through the filing of a tax return, or through a deficiency assessment made by the MDOR. According to the MDOR, once it has made a deficiency assessment and established the amount of tax to be paid, a late-filed return is treated as an application for an abatement.[8] The MDOR stressed, however, that the effect of a late return under Massachusetts law was irrelevant to the definition of return under § 523, arguing that:

> Regardless of how state law treats a late filed return, the timeliness requirement of nonbankruptcy law is a part of the definition of "return" for discharge purpose. Therefore a late return can never qualify as a return, for purposes of [ ] § 523 (even if the return is accepted by the revenue agency) unless it is filed under the § 6020(a) safe harbor or similar state law exception.

The Debtor asserted in his supplemental memorandum, also filed on January 31, 2013, that "[n]owhere, in either the Massachusetts General Laws or the Code of

Massachusetts Regulations, is it stated that a document, which satisfies the definition of a return in all other respects, is nevertheless not a return when it is filed after the due date." He further argued that the very language of Mass. Gen. Laws ch. 62C, § 28 permits a taxpayer, once notified by the commissioner of its failure to file a return, to still file a *proper return* within 30 days before a tax will be assessed. Additionally, the Debtor maintained that he "satisfied each element of the definition of a 'return'" articulated in 830 Mass.Code Regs. 62C.26.1, insofar as he filed with the Commissioner of Revenue a "signed declaration of the tax due ... properly completed ... on a form prescribed by the Commissioner."

After consideration of the supplemental memoranda, the bankruptcy court entered an order denying the MDOR's summary judgment motion on March 11, 2013. In its accompanying memorandum of decision,[9] the court explained:

> I believe the MDOR's interpretation of § 523(a) is ill-conceived and unjustified. Interpreting the definitional paragraph of § 523(a) to mean that all late-filed Massachusetts tax returns are not returns renders virtually meaningless § 523(a)(1)(B)(ii), arguably the most frequently resorted-to subsection of § 523(a)(1). The interpretation of the definitional paragraph advanced by the MDOR and the decisions upon which it

---

**7.** *See In re Colón Martinez,* 472 B.R. 137, 139 n. 4 (1st Cir. BAP 2012) (citation omitted) (stating we may take judicial notice of the bankruptcy court's docket).

**8.** Massachusetts law defines an "abatement" as:

[T]he determination by the Commissioner that an assessment exceeds the amount properly due and the adjustment by the Commissioner of the amount in the Commissioner's assessment records.

830 Mass.Code Regs. 62C.26.1(2).

**9.** The memorandum of decision also addressed the MDOR's motion for summary judgment in *Brown v. Mass. Dep't of Revenue (In re Brown),* 489 B.R. 1, 5 (Bankr.D.Mass. 2013), which motion was similarly denied. The *Brown* order is the subject of a separate appeal presently pending before this Panel, *Brown v. Mass. Dep't of Revenue (In re Brown),* BAP No. MW 13–027 (B.A.P. 1st Cir. May 29, 2013).

relies, rewrites § 523(a)(1)(B)(ii) so that it no longer covers late-filed returns filed more than two years prior to bankruptcy but merely covers late returns prepared pursuant to § 6020(a) of the Internal Revenue Code or similar statutes. The *IRS Chief Counsel Notice,* CC–2010–016, 2010 WL 3617597 (Sept. 10, 2010), refers to the number of § 6020(a) returns as "minute" and observes that taxpayers do not even have the right to demand that the IRS prepare such returns on their behalf. For all practical purposes, therefore, the interpretation advocated by the MDOR renders § 523(a)(1)(B)(ii) a nullity. In *Martin v. United States of America (In re Martin),* 482 B.R. 635, 639 (Bankr. D.Colo.2012), Judge Campbell refused to adopt an interpretation of the definitional paragraph of § 523(a) similar to the one advocated by the MDOR here because it would make § 523(a)(1)(B)(ii) superfluous.

The interpretation of the definitional paragraph being advanced by the MDOR also renders superfluous the reference at the end of the definitional paragraph itself to late-filed returns under § 6020(b) of the Internal Revenue Code. If all late-filed returns except § 6020(a) returns are not returns there is no need to state that § 6020(b) returns are not returns.

There is no legislative history available to shed light on Congressional intent in enacting the BAPCPA amendment to § 523(a). In the absence of any legislative history I will not adopt the MDOR's interpretation. It simply does too much violence to the statute. As the Supreme Court declared in *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), "[t]his Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history."

A far more sensible reading of the definitional paragraph added to § 523(a) by BAPCPA is that the phrase "the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)" refers to a return that *qualifies* as a return under applicable nonbankruptcy law including the filing requirements of such law. This essentially was the approach taken pre-BAPCPA by the courts adopting the *Beard* test when determining whether a return was a return under federal law and it seems quite logical to read the BAPCPA addition of the definitional paragraph as extending that analytical approach with respect to all tax returns, federal, state or local.

The more nuanced *Beard*-influenced approach to understanding the § 523(a) definitional paragraph does not mean tardiness in filing a tax return may never be relevant to application of the definition. On the contrary, if a late-filed return is not considered a return under applicable law then the relevant tax will be non-dischargeable under § 523(a)(1)(B)(i) since no return will have been filed.

Applying this approach to the cases here means answering the question, did the late-filed state income tax returns of Messrs. Brown and Gonzalez qualify as returns under Massachusetts law or put another way, did the late-filed returns serve any tax purpose under Massachusetts law? The answer is an emphatic "yes." A late-filed return serves as the formal assessment of the tax in the amount set forth therein. Mass. Gen. Laws ch. 62C, § 26(a) provides:

Taxes shall be deemed to be assessed at the amount shown as the tax due upon any return filed under the provisions of this chapter and on any amendment, correction or supplement thereof, or at the amount properly due, whichever is less, and *at the time when the return is filed or required to be filed, whichever occurs later.* (emphasis supplied).

The only way a late-filed return does not serve as the tax assessment under Massachusetts law is when the commissioner of revenue assesses the tax first. Mass. Gen. Laws ch. 62C, § 26(d) states:

In the case of a false or fraudulent return filed with intent to evade a tax or of a failure to file a return, the commissioner may make an assessment at any time, without giving notice of his intention to assess, determining the tax due according to his best information and belief.

In connection with the taxes at issue in these cases there was no assessment by the commissioner of revenue prior to Messrs. Brown and Gonzalez filing their returns. Their late-filed returns are thus "returns" under applicable Massachusetts law and there is no basis in Bankruptcy Code § 523(a) for excepting from discharge the taxes assessed by such returns.

As the returns in these cases were filed prior to tax assessment by the commissioner I need not address the question whether a late-filed return after assessment qualifies as a return under Massachusetts law. As indicated previously, with respect to federal taxes courts are in disagreement as to whether a post-assessment late-filed return constitutes a return for purposes of federal law, with a sizable majority of courts holding it does not. What the result would be

for Massachusetts tax returns will have to await a future case or controversy. For the foregoing reasons, the MDOR's motions for summary judgment will be denied. As the only disputed issue in these adversary proceedings has now been decided, it would be appropriate to enter summary judgment in favor of Messrs. Brown and Gonzalez. Before doing so, however, I will give the MDOR 30 days to submit in writing any reasons why summary judgment in favor of plaintiffs should not enter.

*In re Brown,* 489 B.R. at 5.

Absent a response from the MDOR, on May 21, 2013, the bankruptcy court entered judgment in favor of the Debtor. This appeal followed. On appeal, the parties reiterate the arguments presented below.

### *JURISDICTION*

A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.),* 226 B.R. 724, 725 (1st Cir. BAP 1998). A panel may hear appeals from "final judgments, orders, and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). "An order granting summary judgment, where no counts remain, is a final order." *DeGiacomo v. Traverse (In re Traverse),* 485 B.R. 815, 817 (1st Cir. BAP 2013) (internal quotations and citation omitted). Thus, the Panel has jurisdiction.

### *STANDARD OF REVIEW*

A bankruptcy court's findings of fact are reviewed for clear error and its

conclusions of law are reviewed *de novo. Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.*, 592 F.3d 267, 269 (1st Cir.2010). "We apply a *de novo* standard of review to orders granting summary judgment." *Traverse*, 485 B.R. at 819.

## DISCUSSION

### I. The Standard

█ Section 727 governs the scope of a chapter 7 discharge. 11 U.S.C. § 727. This section excepts from discharge those debts outlined in § 523. 11 U.S.C. § 727(b). Exceptions to discharge must be strictly construed in favor of the debtor. *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir.2001) (citation omitted). In relevant part, § 523 provides that:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, or equivalent report or notice, if required—

(i) was not filed or given; or

(ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition. . . .

11 U.S.C. § 523(a)(1)(A) and (B).

Subsection (i) of § 523(a)(1)(B) excludes from discharge tax liabilities where the debtor never files or gives a return. *See In re Ryan*, 504 B.R. 686, 699 (Bankr. D.Mass.2013) (citation omitted); *see also Moroney v. United States (In re Moroney)*, 352 F.3d 902, 904 (4th Cir.2003). Subsection (ii) "provides a time requirement for filing a return for dischargeability purposes." *Savage v. Internal Revenue Serv. (In re Savage)*, 218 B.R. 126, 132 (10th Cir. BAP 1998). In this subsection, sometimes referred to as the "two-year rule," Congress "dealt specifically with the issue of when a return must be filed in order for the tax liability for that year to be dischargeable." *Id.* (citation omitted). This rule "excludes from discharge taxes for which a return was filed *both* after its original due date *and* within two years of the filing of the debtor's bankruptcy petition." *Moroney*, 352 F.3d at 905 n. 1 (emphasis added). Thus, even if the return was not timely filed, any related delinquent tax debt was not excepted from discharge solely because the return was untimely. The intent of this rule was to avoid bankruptcy filings for the purpose of discharging tax debt. *Wood v. United States (In re Wood)*, 78 B.R. 316, 322 (Bankr.M.D.Fla.1987).

"Pre–BAPCPA, the Bankruptcy Code did not define 'return.'" *Perry v. United States*, 500 B.R. 796, 800 (M.D.Ala.2013). In the absence of a statutory definition, the majority of courts applied a four-factor test articulated by the United States Tax Court in *Beard, supra*, subsequently reiterated by the Sixth Circuit in *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029 (6th Cir.1999), and referred to alternately as the "*Beard* test" or the "*Hindenlang* test." [10] *See id.; see also*

---

**10.** The *Hindenlang* court explained that the *Beard* tax court derived this four-part test from two Supreme Court cases: *Germantown* *Trust Co. v. Comm'r*, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940), and *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 55 S.Ct.

*Wogoman,* 475 B.R. at 248–49. Under this test, in order for a document to qualify as a return under § 523, "(1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law." *Hindenlang,* 164 F.3d at 1033 (internal quotations and citation omitted). Prior to BAPCPA, a debtor's tardiness was relevant to the question of whether a tax return qualified as an honest and genuine attempt to comply with the tax laws, thereby satisfying the fourth prong of the *Beard* test. *See, e.g., In re Moroney,* 352 F.3d at 906–07 (holding that a return filed post-assessment by the IRS does not satisfy fourth element of *Beard* test).

BAPCPA amended § 523(a) by adding an unnumbered, "hanging paragraph," defining the term "return" for purposes of that subsection. *Id.* It states:

> For purposes of this subsection, the term 'return' means a return that satisfies the requirements of applicable non-bankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a)(*). "Section 6020(a) returns are those in which a taxpayer who has failed to file his or her returns on time nonetheless discloses all information necessary for the I.R.S. to prepare a substitute return that the taxpayer can then sign and submit." *McCoy,* 666 F.3d at 928 (citation

and footnote omitted). "In contrast, a § 6020(b) return is one in which the taxpayer submits either no information or fraudulent information, and the I.R.S. prepares a substitute return based on the best information it can collect independently." *Id.* (citation and footnote omitted).

Courts disagree as to whether the four-pronged *Beard* test for determining whether the debtor filed a "return" remains relevant post-BAPCPA. *See, e.g., Rhodes v. United States (In re Rhodes),* 498 B.R. 357, 363 (Bankr.N.D.Ga.2013) (holding *Beard* still applies); *McCoy,* 666 F.3d at 930 (BAPCPA abrogates *Beard*); *Martin v. United States (In re Martin),* 500 B.R. 1, 8 (D.Colo.2013) (holding, in the context of federal returns, " 'Beard test' was the relevant law to determine whether a filing is a 'return,' because that test constituted the 'applicable bankruptcy law' "); *Wogoman,* 475 B.R. at 250 (declining to decide whether *Beard* retained vitality because debtor's returns filed following IRS' collection efforts did "not meet applicable filing requirements"); *Shinn,* 2012 WL 986752, at *6 (BAPCPA abrogates *Beard*); *Links,* 2009 WL 2966162, at *5 n. 2 (same); *Creekmore,* 401 B.R. at 751–52 (same).

Although courts disagree regarding the continued validity of the *Beard* test, we conclude that BAPCPA's amendment to § 523(a) provides an unambiguous definition of "return" which obviates the need to return to the pre-BAPCPA *Beard* test under the circumstances presented here. Unlike the bankruptcy court below, we see no need to extend *Beard* 's reach to the context of the post-BAPCPA state tax return presented in the instant appeal. Because Massachusetts law provides a definition of a "return," we limit our examination to whether the Debtor's state

127, 79 L.Ed. 264 (1934). *Hindenlang,* 164

F.3d at 1033 (citing *Beard,* 82 T.C. at 777).

326

tax returns that were filed after the deadline but more than two years prior to his bankruptcy filing, qualify as "returns" within the Bankruptcy Code's definition of "return" set forth in § 523(a)(*).

As noted above, § 523(a)(*) begins the definition of "return" by stating that "return" means "a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)." 11 U.S.C. § 523(a)(*). The statute's "next sentence then provides additional specificity by stating what the 'return' does and does not include with references to subsections (a) and (b) of § 6020 of the Internal Revenue Code." *Rhodes*, 498 B.R. at 363. As the *Rhodes* court observed:

First, a "return" includes "a return made pursuant to section 6020(a) of the Internal Revenue Code of 1986 ..., or similar State or local law, or a written stipulation to a judgment or final order entered by a nonbankruptcy tribunal." Section 6020(a) of the Internal Revenue Code authorizes the IRS to prepare a return on behalf of the taxpayer with the taxpayer's participation.

This inclusive language makes it clear that, if the debtor participates in the determination of her tax liability, either through participation in the filing of a return by a taxing authority or by stipulating to the amount of the tax, that determination constitutes the filing of a "return" for dischargeability purposes....

The exclusive language in the second part of the sentence states that a "return" does *not* include "a return made pursuant to section 6020(b) of the Internal Revenue Code ..., or a similar State or local law."....

Taken together, the import of the sentence's second part and § 6020(b) is that, if a taxpayer fails to timely file a return and the IRS elects to prepare a return without the cooperation of the Debtor based on the information available to it, the "substitute return" prepared by the IRS does not qualify as a return for dischargeability purposes. *Id.* at 363–64. The § 523(a)(*) definition of return "makes it clear that a debtor cannot discharge a tax for which a return is required if the debtor herself never filed a return." *Id.* at 364.

Here, however, the Debtor did file returns, albeit late, and neither the Debtor nor the MDOR suggest that this appeal involves returns prepared pursuant to either 26 U.S.C. § 6020(a) or (b), or similar state law;[11] nor does it involve a written stipulation to a judgment or a final order of a nonbankruptcy tribunal. Thus, the question becomes whether the Debtor's belated returns fall within the initial definitional language of § 523(a)(*), that is, whether they satisfy "the requirements of applicable nonbankruptcy law (including applicable filing requirements)." 11 U.S.C. § 523(a)(*).

In this appeal, Massachusetts state law provides the "applicable nonbankruptcy law (including applicable filing requirements)." It provides, in relevant part:

Every individual inhabitant of the commonwealth who receives or accrues during the taxable year Massachusetts gross income, as defined in section two of chapter sixty-two, in excess of eight thousand dollars shall make a return of such income.

Mass. Gen. Laws ch. 62C, § 6(a). The Code of Massachusetts Regulations defines the term "return" as "a taxpayer's *signed*

11. Massachusetts law does not have an equivalent to 26 U.S.C. § 6020(a) or (b).

declaration of the tax due, if any, *properly completed* by the taxpayer or the taxpayer's representative on a *form* prescribed by the Commissioner and *duly filed* with the Commissioner." 830 Mass.Code Regs. 62C.26.1(2) (emphasis added). Absent from the Massachusetts definition of "return" codified in 830 Mass.Code Regs. 62C.26.1(2) is any timeliness requirement. Rather, the regulation's language, "duly filed," together with its requirement for the taxpayer's signature on the prescribed form, reinforces that in Massachusetts, in order for a document to qualify as a return, consideration must be given to its form and contents, and the place and manner of filing. *See* 830 Mass.Code Regs. 62C.26.1(2). In other words, the determination is controlled by what the debtor filed, and not when.

Significantly, in response to this Panel's inquiry during oral argument, the MDOR stated that under Massachusetts law, a late-filed return is treated as a return. Nor does tardiness eliminate the obligation to file a return. In fact, under Massachusetts law, there are consequences for a return's lateness, including: (a) the imposition of a penalty pursuant to Mass. Gen. Laws ch. 62C, § 33[12] (entitled "Late returns; penalty; abatement") and/or § 28; (b) the imposition of interest pursuant to Mass. Gen. Laws ch. 62C, § 32(a); and (c) the creation of an assessment pursuant to Mass. Gen. Laws ch. 62C, § 26(a). When the late-filed return is made post-assessment, it is treated as an abatement application. The MDOR explains that "[i]f a return is not filed, a deficiency assessment

may be made by the Commissioner." If a late-filed return reports a lower tax than the amount of the deficiency assessment, then it will be considered a request for an abatement. Only in this limited instance is a return treated differently. In no other instance of a late filing does Massachusetts law treat the document as something other than a return. Nowhere in the Massachusetts regulatory or statutory law is it specified that a return will be deemed something other than a return in the event of its untimely filing. Thus, we discern no timeliness requirement encompassed in the applicable nonbankruptcy law which governs the specific situation confronting us, namely the case of a late-filed—but pre-assessment—state income tax return. We need not delve into questions regarding the consequence of filing either a state or federal income tax return post-assessment, as that issue is not before us. Moreover, the MDOR did not conduct an assessment of the Debtor's tax liabilities prior to the filing of his belated returns.

■ We are mindful that some courts have held that *any* late-filed return is not a "return" for purposes of § 523(a). *See, e.g., McCoy*, 666 F.3d at 932; *Fahey v. Mass. Dep't of Revenue (In re Fahey)*, No. 12–1204, 2013 WL 2897046, at *4 (Bankr. D.Mass. June 11, 2013), *appeal docketed*, No. 1:13–cv–11875–WGY (D.Mass. Aug. 6, 2013); *Pendergast v. Mass. Dep't of Revenue (In re Pendergast)*, 494 B.R. 8, 12 (Bankr.D.Mass.2013), *appeal docketed*, No. MB 13–032 (1st Cir. BAP Aug. 28, 2013); *but see Rhodes*, 498 B.R. at 365 (holding

---

**12.** Mass. Gen. Laws ch. 62C, § 33 (entitled "Late returns; penalty; abatement") specifically provides, in pertinent part:

    (a) If any return is not filed with the commissioner on or before its due date or within any extension of time granted by him, there shall be added to and become a part of the tax, as an additional tax, a penalty of

one per cent of the amount required to be shown as the tax on such return for each month or fraction thereof during which such failure continues, not exceeding, in the aggregate, twenty-five per cent of said amount.

Mass. Gen. Laws ch. 62C, § 33(a).

timeliness is not an applicable filing requirement).

We decline to adopt such a "per se" rule that any late-filed return is not a "return" for the following two reasons: exceptions to discharge must be strictly construed in favor of the debtor; and under the "two-year rule," it is an undisputed fact that debtors' late tax returns are eligible for a discharge. 11 U.S.C. § 523(a)(1)(B)(ii). In other words, Congress allowed tax debt to be discharged if it was owed more than two years before filing the bankruptcy, even if the return was filed late. Third, the definition of "return" in the "hanging paragraph," § 523(*), appears to be grounded on *what* is filed rather than *when* it is filed because it specifically includes a late-filed return under § 6020 of the Internal Revenue Code. The inclusion of 26 U.S.C. § 6020(a) versus § 6020(b) hinges on the cooperation of the taxpayer, not on any time requirement. Therefore, it seems inconsistent to conclude that the satisfaction of filing requirements allows only timely filed returns. This absolute exclusion of any late-filed return would render § 523(a)(1)(B)(ii) and the second sentence of § 523(*) superfluous, since both specifically allow for late-filed returns. Fourth, under Massachusetts state law, the definition of a "return" does not include a timeliness requirement. Furthermore, the MDOR acknowledged during oral argument that a late-filed return is treated as a return and that there are consequences for a return's lateness.

Timeliness is an important requisite with its own consequences, but bears no relation to what a return is under Massachusetts law. We want to stress that taxpayers need to file their returns on time. However, Congress does allow the discharge of tax debts under certain circumstances, as in the instant case. Accordingly, we conclude that the bankruptcy court properly determined that the Debtor's obligations to the MDOR for the 2000 through 2004 tax years were discharged.

### CONCLUSION

Based on the foregoing, the bankruptcy court's judgment entered in favor of the Debtor is hereby **AFFIRMED.**