Timothy P. PENDERGAST, Debtor.

Timothy P. Pendergast, Plaintiff–Appellant,

v.

Massachusetts Department of Revenue, Defendant–Appellee.

Steven P. Wood, Debtor.

Steven P. Wood, Plaintiff–Appellant,

v.

Massachusetts Department of Revenue, Defendant–Appellee.

BAP Nos. MB 13–032, MB 13–058. Bankruptcy Nos. 12–14455–WCH, 11–21345–WCH. Adversary Nos. 12–01215–WCH, 13–01074–WCH.

United States Bankruptcy Appellate Panel for the First Circuit.

Filed May 2, 2014.

Roger Stanford, Esq., on briefs, for Defendants–Appellants.

Celine E. Jackson, Esq., Jeffrey S. Ogilvie, Esq., Redding, CA, and Daniel J. Hammond, Esq., Boston, MA, on briefs, for Defendants–Appellees.

Before DEASY, CABÁN, and FINKLE, United States Bankruptcy Appellate Panel Judges.

CABÁN, Bankruptcy Judge.

This opinion addresses two appeals that present the same legal issue and similar facts. Both appeals arise out of adversary proceedings in which the debtors sought a determination that the state income tax liabilities they owed to the defendant, the Massachusetts Department of Revenue (the "MDOR"), were subject to discharge pursuant to § 727, notwithstanding that they filed their corresponding tax returns late.[1] The controlling issue in both cases is whether late-filed Massachusetts income tax returns, including returns filed post-assessment by the MDOR,[2] qualify as re-

---

**1.** Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 37 ("BAPCPA").

**2.** Massachusetts law defines an "assessment" as:

turns for discharge purposes. The bankruptcy court answered this question in the negative, and both debtors appealed. For the reasons set forth below, we **AFFIRM** the judgments of the bankruptcy court in part, and **REVERSE** in part.

## BACKGROUND

The material facts are not in dispute. On October 5, 2009, Timothy P. Pendergast ("Pendergast") filed his Massachusetts resident income tax returns for the tax years 2001, 2002, 2003, 2004, 2005, and 2007. All were overdue. Furthermore, for the tax years 2002, 2003, 2004, and 2005, Pendergast filed his returns after the MDOR had already assessed a personal income tax against him. Pendergast filed a voluntary petition for chapter 7 relief on May 22, 2012. On Schedule F accompanying his petition, Pendergast listed personal income tax debts owed to the MDOR for the years 2001, 2002, 2003, 2005, and 2007 totaling more than $20,000.00. He did not list a liability to the MDOR for the 2004 tax year; nor did he subsequently amend his return to include that year. On August 21, 2012, he received a discharge of his debts pursuant to § 727.

Steven P. Wood ("Wood") similarly failed to timely file his Massachusetts resident income tax returns for the tax years 2000 through 2005, all of which he filed on July 20, 2009. Furthermore, for all but tax year 2003, Wood filed his returns after the MDOR had assessed a personal income tax against him. On December 6, 2011, Wood filed a voluntary chapter 12 bankruptcy petition, which the court subsequently converted to a chapter 7. On his Schedule F, he listed income tax liabilities to the MDOR for 2000 through 2005, exceeding $40,000.00. On January 13, 2014, the bankruptcy court entered an order granting Wood a discharge under § 727.

Pendergast and Wood (collectively the "Debtors"), represented by the same counsel, initiated separate adversary proceedings against the MDOR, seeking determinations that their prepetition state income tax debts had been discharged.[3] The MDOR, also represented by the same counsel in both adversary proceedings, filed summary judgment motions in both cases, arguing that as a matter of law the income tax liabilities in question were not discharged because the Debtors filed late tax returns for all of the applicable years.

The MDOR's argument turned on the language in BAPCPA which amended § 523(a) by adding an unnumbered hanging paragraph, which states:

> For purposes of this subsection, the term 'return' means a return that satisfies the requirements of applicable non-bankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of

[T]he process of the Department of Revenue's determination or verification of the amount of tax, as provided under M.G.L. c. 62C, §§ 24, 25, and 26, imposed and due from a taxpayer under M.G.L. chs. 60A; 62 through 64J; 65B and 65C; M.G.L. c. 121A, § 10; M.G.L. c. 138, § 21; and the entry of the amount of the tax due in the Commissioner's assessment records; or the taxpayer's calculation and declaration of the tax due, as provided under M.G.L. c. 62C, § 26(a), completed in full on a return,

including any amendment, correction, or supplement thereto, by the taxpayer or the taxpayer's representative and duly filed with the Commissioner.
830 Mass.Code Regs. 62C.26.1(2).

3. In his adversary complaint, Pendergast sought to have his tax liability for the tax year 2004 included within the scope of his discharge, notwithstanding his failure to list 2004 on his Schedule F.

1986,[4] or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986,[5] or a similar State or local law.

11 U.S.C. § 523(a)(*) (footnotes added).[6]

The MDOR argued that the definition of "return" provided in § 523(a)(*) requires that a purported return satisfy the requirements of applicable nonbankruptcy law (including applicable filing requirements). The MDOR contended that the parenthetical phrase, "including applicable filing requirements," included the requirement that income tax returns be filed timely. Because neither Pendergast nor Wood filed his returns timely, the MDOR concluded that their late-filed returns did not qualify as "returns" under § 523(a)(*). It followed under this theory that no returns were filed for the years at issue, rendering the taxes in question excepted from discharge pursuant to § 523(a)(1)(B)(i).

The MDOR relied on cases holding that the definition of "return" in amended § 523 means that a late-filed federal income tax return, unless filed pursuant to 26 U.S.C. § 6020(a), can never qualify as a return for dischargeability purposes be-

cause it does not comply with the applicable filing requirements. *See, e.g., Shinn v. Internal Revenue Serv. (In re Shinn)*, Adv. No. 10–8139, 2012 WL 986752 (Bankr.C.D.Ill. Mar. 22, 2012); *Hernandez v. United States (In re Hernandez)*, Adv. No. 11–5126–C, 2012 WL 78668 (Bankr. W.D.Tex. Jan. 11, 2012); *Cannon v. United States (In re Cannon)*, 451 B.R. 204 (Bankr.N.D.Ga.2011); *Links v. United States (In re Links)*, No. 08–3178, 2009 WL 2966162 (Bankr.N.D.Ohio Aug. 21, 2009); *Creekmore v. Internal Revenue Serv. (In re Creekmore)*, 401 B.R. 748 (Bankr.N.D.Miss.2008). The MDOR also cited *McCoy v. Miss. State Tax Comm'n*, 666 F.3d 924 (5th Cir.2012), for the same principle, in the context of state income tax returns. The MDOR further argued that the bankruptcy court wrongly decided *Gonzalez v. Mass. Dep't of Revenue (In re Gonzalez)*, 489 B.R. 1 (Bankr.D.Mass. 2013), *aff'd*, 506 B.R. 317 (1st Cir. BAP 2014), *appeal docketed*, No. 14–9002 (1st Cir. Mar. 31, 2014), and *Brown v. Mass. Dep't of Revenue (In re Brown)*, 489 B.R. 1 (Bankr.D.Mass.2013), *aff'd*, BAP No. MW 13–027, 2014 WL 1815393 (1st Cir. BAP April 3, 2014), *appeal docketed*, No. 14–9003 (1st Cir. April 11, 2014).[7] There,

---

4. Section 6020(a) of the Internal Revenue Code provides:

(a) Preparation of return by Secretary. If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.

26 U.S.C. § 6020(a).

5. Section 6020(b)(1) of the Internal Revenue Code provides:

(b) Execution of return by Secretary.

(1) Authority of Secretary to execute return. If any person fails to make any re-

turn required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

26 U.S.C. § 6020(b)(1).

6. Courts denote this hanging paragraph, inserted immediately after § 523(a)(19), with an asterisk, a practice which we adopt.

7. We note that since the publication of *In re Brown/In re Gonzalez* and the subsequent affirmances by this Panel, the United States District Court for the District of Massachusetts adopted the position of the MDOR and

another Massachusetts bankruptcy court ruled that "applicable filing requirements" must refer to something other than timeliness and the debtors' liabilities for which the corresponding returns were filed late were nonetheless within the scope of the debtors' discharge. Lastly, the MDOR maintained that a majority of courts have held that post-assessment tax returns do not qualify as "returns" for dischargeability purposes because they do not represent an honest and reasonable effort to satisfy the tax law, as required by pre-BAPCPA case law.

The Debtors opposed the entry of summary judgment. Relying on the bankruptcy court's decision in *In re Brown/In re Gonzalez*, the Debtors argued that a late-filed return still serves as a formal assessment pursuant to Mass. Gen. Laws ch. 62C, § 26(a). They further asserted that under the MDOR's view, § 523(a)(1)(B)(ii) would apply only to rare instances when the Internal Revenue Service (the "IRS") prepares returns pursuant to 26 U.S.C. § 6020(a).

The bankruptcy court decided Pendergast's case first. On June 11, 2013, it entered summary judgment in favor of the MDOR, reasoning as follows:

> I do not start "from the premise that this language is imprecise," but instead must "assume that ... Congress said what it meant." Moreover, "[i]t is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"

the above-cited cases. *See Perkins v. Mass. Dep't of Revenue/Fahey v. Mass. Dep't of Revenue,* 507 B.R. 45 (D.Mass.2014) (holding that late state income tax returns fail to comply with "applicable filing requirements"). Thus,

At the risk of sounding overly simplistic, the filing deadline contained in Mass. Gen. Laws ch. 62C, § 6(c) would seem to be exactly the type of "filing requirements" to which the parenthetical phrase applies. The "filing requirements," to the extent that such term was separately emphasized in the parenthetical phrase, is clearly distinct from the issue of whether the attributes of any particular form qualify as a "return" under state or federal law. The vast majority of courts agree. While I recognize that there is something unsavory about saying that a "late-filed return" is not a "return" under 11 U.S.C. § 523(a) by virtue of its tardiness, I cannot characterize this result as absurd.

Admittedly, other courts within this district have concluded that this reading "does too much violence to the statute." In *In re Brown/Gonzalez*, Judge Hoffman, relying on *In re Martin [,* 482 B.R. 635 (Bankr.D.Colo.2012) *]*, reasoned that if all Massachusetts late-filed returns are not "returns" for purposes of this section, 11 U.S.C. § 523(a)(1)(B)(ii), which only applies to untimely returns, would be rendered "virtually meaningless" and "a nullity" because the number of returns filed pursuant to 26 U.S.C. § 6020(a) are minute and not within a debtor's control. Judge Hoffman also found that "if all late-filed returns except § 6020(a) returns are not returns[,] there is no need to state that § 6020(b) returns are not returns," rendering the reference to 26 U.S.C. § 6020(b) superfluous. In closing, he noted that in the absence of legislative history to shed light on the Congressional intent behind the hanging paragraph, he was reluctant

at both the trial and appellate levels, courts within the District of Massachusetts are divided on the issue of whether a late-filed return is nonetheless a return for dischargeability purposes.

to interpret it to effectuate a major change in pre-BAPCPA practice. Judge Boroff subsequently adopted Judge Hoffman's reasoning in its entirety and without discussion in *In re Perkins*.

Unfortunately, I must respectfully disagree with my colleagues. The fact that 11 U.S.C. § 523(a)(1)(B)(ii) applies to only a small number of cases does not render it a nullity. So long as there is at least one situation where an untimely return is still considered a "return" for purposes of 11 U.S.C. § 523(a), 11 U.S.C. § 523(a)(1)(B)(ii) will apply and have meaning. I am also unpersuaded that the reference to 26 U.S.C. § 6020(b) is superfluous under this construction. As elucidated by the United State[s] Court of Appeals for the Fifth Circuit in *In re McCoy*, the reference "simply explains that returns filed pursuant to § 6020(a) do qualify as returns for discharge purposes, while those filed pursuant to § 6020(b) do not."

*Pendergast v. Mass. Dep't of Revenue (In re Pendergast)*, 494 B.R. 8, 13–15 (Bankr. D.Mass.2013) (footnotes omitted).

The bankruptcy court concluded that because each of Pendergast's tax returns for the periods at issue was filed late, "they each failed to satisfy Mass. Gen. Laws ch. 62C, § 6(c), one of the 'applicable filing requirements' of the 'applicable nonbankruptcy law,' and therefore, [were] not 'returns' within the meaning of [ ] § 523(a)." *Id.* at 16 (footnote omitted). Thus, the tax liabilities for the years at issue were nondischargeable. *Id.*

Subsequently, following a December 11, 2013 hearing, the bankruptcy court similarly granted the MDOR's summary judgment motion in Wood's case. Wood filed a motion for reconsideration, which the bankruptcy court promptly denied, citing its decision in *In re Pendergast supra.*

The Debtors filed separate appeals to this Panel. On appeal, the parties largely reiterate the arguments presented below. In a reversal of its earlier position, however, the MDOR argues that the Panel should reject the position advocated by the IRS in analogous cases involving federal tax returns, namely, that only an income tax return filed after the taxing authority makes its own assessment does not qualify as a return. The MDOR's current rationale for rejecting this approach is threefold: (1) § 523(a)(*) is devoid of any reference to the date of assessment; (2) this approach returns to the pre-BAPCPA, common law standard established in *Beard v. Comm'r*, 82 T.C. 766, 774–79 (1984), *aff'd*, 793 F.2d 139 (6th Cir.1986); and (3) the interpretation advocated by the IRS is irrelevant, as the taxing authority involved in these cases is the Commonwealth of Massachusetts. The Debtors acknowledge the IRS position, without taking a stance on the pre- or post-assessment issue.[8]

### *JURISDICTION*

A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724, 725 (1st Cir. BAP 1998). A panel may hear appeals from "final judgments, orders, and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998) (internal quotations omitted). "An order granting sum-

---

8. In both of these cases, we entered an order indicating that we would dispense with oral argument as it would not aid the decisional process. *See.* Fed. R. Bankr.P. 8012.

mary judgment, where no counts remain, is a final order." *DeGiacomo v. Traverse (In re Traverse)*, 485 B.R. 815, 817 (1st Cir. BAP 2013) (internal quotations and citations omitted). Thus, the Panel has jurisdiction.

## STANDARD OF REVIEW

 A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.*, 592 F.3d 267, 269 (1st Cir.2010). "We apply a *de novo* standard of review to orders granting summary judgment." *In re Traverse*, 485 B.R. at 819 (citation omitted).

## DISCUSSION

### I. The Standard

Section 727 governs the scope of a chapter 7 discharge. 11 U.S.C. § 727. This section excepts from discharge those debts outlined in § 523. 11 U.S.C. § 727(b). Exceptions to discharge must be strictly construed in favor of the debtor. *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir.2001) (citation omitted). In relevant part, § 523 provides that:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, or equivalent report or notice, if required—

(i) was not filed or given; or

(ii) was filed or given after the date on which such return, report, or notice was last due, under applica-

ble law or under any extension, and after two years before the date of the filing of the petition. . . .

11 U.S.C. § 523(a)(1)(A) and (B).

Subsection (i) of § 523(a)(1)(B) excludes from discharge tax liabilities where the debtor never files or gives a return. *In re Ryan*, 504 B.R. 686, 700 (Bank.D.Mass. 2013) (citation omitted); *see also Moroney v. United States (In re Moroney)*, 352 F.3d 902, 904 (4th Cir.2003). Subsection (ii) "provides a time requirement for filing a return for dischargeability purposes." *Savage v. Internal Revenue Serv. (In re Savage)*, 218 B.R. 126, 132 (10th Cir. BAP 1998). In this subsection, sometimes referred to as the "two-year rule," Congress "dealt specifically with the issue of when a return must be filed in order for the tax liability for that year to be dischargeable." *Id.* This rule "excludes from discharge taxes for which a return was filed *both* after its original due date *and* within two years of the filing of the debtor's bankruptcy petition." *Moroney*, 352 F.3d at 905 n. 1 (emphasis added). Thus, even if the return was not timely filed, any related delinquent tax debt was not excepted from discharge solely because the return was untimely. The purpose of this rule was to avoid bankruptcy filings for the purpose of discharging tax debt. *Wood v. United States (In re Wood)*, 78 B.R. 316, 322 (Bankr.M.D.Fla.1987).

"Pre–BAPCPA, the Bankruptcy Code did not define 'return.'" *Perry v. United States*, 500 B.R. 796, 800 (M.D.Ala.2013). In the absence of a statutory definition, the majority of courts applied a four-factor test articulated by the United States Tax Court in *Beard, supra*, subsequently reiterated by the Sixth Circuit in *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029 (6th Cir.1999), and referred

to alternately as the *"Beard* test" or the *"Hindenlang* test."[9] *See Perry v. United States*, 500 B.R. at 800; *see also Wogoman v. Internal Revenue Serv. (In re Wogoman)*, 475 B.R. 239, 248–49 (10th Cir. BAP 2012). Under this test, in order for a document to qualify as a return under § 523, "(1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law." *Hindenlang*, 164 F.3d at 1033 (internal quotations and citation omitted). Prior to BAPCPA, a debtor's tardiness was relevant to the question of whether a tax return qualified as an honest and genuine attempt to comply with the tax laws, thereby satisfying the fourth prong of the *Beard* test. *See, e.g., In re Moroney*, 352 F.3d at 906–907 (holding that a return filed post-assessment by the IRS does not satisfy fourth element of *Beard* test).

As we previously explained, due to the BAPCPA amendments, § 523(a) now defines the term "return" for purposes of that subsection as follows:

> For purposes of this subsection, the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a)(*).

"Section 6020(a) returns are those in which a taxpayer who has failed to file his or her returns on time nonetheless discloses all information necessary for the I.R.S. to prepare a substitute return that the taxpayer can then sign and submit." *McCoy*, 666 F.3d at 928 (citation and footnote omitted). "In contrast, a § 6020(b) return is one in which the taxpayer submits either no information or fraudulent information, and the I.R.S. prepares a substitute return based on the best information it can collect independently." *Id.* (citation and footnote omitted).

## II. The Standards Applied

■ In *In re Gonzalez, supra,* we recently considered whether a chapter 7 debtor's state income tax returns filed after the due date specified by Massachusetts law, but before any assessment by the state taxing authority, qualified as returns. There, we declined to adopt a "per se" rule that any late-filed return is not a "return," for the following reasons:

> [First,] exceptions to discharge must be strictly construed in favor of the debtor[. Second,] under the "two-year rule," it is an undisputed fact that debtors' late tax returns are eligible for a discharge. 11 U.S.C. § 523(a)(1)(B)(ii). In other words, Congress allowed tax debt to be discharged if it was owed more than two years before filing the bankruptcy, even if the return was filed late. Third, the definition of "return" in the "hanging paragraph," § 523[ (a) ](*), appears to be grounded on *what* is filed rather than *when* it is filed because it specifically

**9.** The *Hindenlang* court explained that the *Beard* court derived this four-part test from two Supreme Court cases: *Germantown Trust Co. v. Comm'r*, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940), and *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934). *Hindenlang*, 164 F.3d at 1033 (citing *Beard*, 82 T.C. at 777).

includes a late-filed return under § 6020 of the Internal Revenue Code. The inclusion of 26 U.S.C. § 6020(a) versus § 6020(b) hinges on the cooperation of the taxpayer, not on any time requirement. Therefore, it seems inconsistent to conclude that the satisfaction of filing requirements allows only timely filed returns. This absolute exclusion of any late-filed return would render § 523(a)(1)(B)(ii) and the second sentence of § 523[ (a) ](*) superfluous, since both specifically allow for late-filed returns. Fourth, under Massachusetts state law, the definition of a "return" does not include a timeliness requirement. Furthermore, the MDOR acknowledged during oral argument that a late-filed return is treated as a return and that there are consequences for a return's lateness.

*In re Gonzalez,* 506 B.R. at 328.[10]

Moreover, in *Gonzalez,* we made it clear that: (1) § 523(a)(*) replaces the *Beard* test; (2) when determining whether a Massachusetts state income tax return satisfies § 523(a)(*), Massachusetts state law provides the "applicable nonbankruptcy law"; and (3) we discerned no timeliness requirement encompassed in the applicable nonbankruptcy law governing the case of a late-filed—but pre-assessment—income tax return in Massachusetts. *Gonzalez,* 506 B.R. at 325–28. Accordingly, we held that the bankruptcy court in that case properly determined that the debtor's obligations to the MDOR were discharged, notwithstanding the late filing of his returns. *Id.* at 328. We explicitly refrained from opining as to the consequence of filing either a state or federal income tax return post-assessment, as that issue was not then before us. *Id.* at 327.

It is, however, now ripe for adjudication. Pendergast tardily filed all of his returns for the years at issue; and for the tax years 2002, 2003, 2004, and 2005, he filed those returns post-assessment by the taxing authority. Wood likewise filed five out of six of the subject tax returns not only late but post-assessment. Only his return for the tax year 2003 was filed pre-assessment.

■ Here, as in *Brown* and *Gonzalez,* Massachusetts state law provides the "applicable nonbankruptcy law (including applicable filing requirements)." In Massachusetts,

> "An assessment of a tax liability may come about in two ways: by self-assessment or by a deficiency assessment made by [the M]DOR. A self-assessment occurs when a taxpayer files a return. The tax is 'deemed assessed' when the return is filed or required to be filed, whichever is later, and in the amount shown on the return or properly due, whichever is less.... If [the M]DOR determines, through audit or otherwise, that the full amount of a tax is not assessed or deemed assessed (as when no return has been filed), a deficiency assessment may be made."

*RHI Holdings, Inc. v. Comm'r of Revenue,* No. 98–P–1164, 2001 WL 114686, at *1 n. 2 (Mass.App.Ct. Feb. 9, 2001) (quoting 5 *Official Mass. Tax Guide* at 639 (West 1999)); *see also* Mass. Gen. Laws ch. 62C, § 26(d) ("In the case of ... a failure to file a return, the commissioner may make an assessment at any time, without giving notice of his intention to assess, determining the tax due according to his best information and belief").

(1st Cir. BAP April 3, 2014) (quoting *In re Gonzalez,* 506 B.R. at 328).

---

10. Based upon nearly identical facts, we reiterated this reasoning in *In re Brown,* BAP No. MW 13–027, slip op. at 11, 2014 WL 1815393

■ As we stated in *Gonzalez*, based upon information provided to us by the MDOR, providing there is no deficiency assessment, a return, notwithstanding its untimeliness, would create an assessment under Massachusetts law and would still be treated as a return (with certain penalties imposed for its tardiness). 506 B.R. at 327. However, according to the MDOR, "[w]hen the late-filed return is made post-assessment, it is treated as an abatement application."[11] *Id.* As we previously noted: "Only in this limited instance is a return treated differently. In no other instance of a late filing does Massachusetts law treat the document as something other than a return." *Id.*

Section 523(a)(*) provides that a document prepared under 26 U.S.C. § 6020(a) or a similar state law is a "return" for purposes of dischargeability while one under § 6020(b) or a similar state law is not. The difference between the two sections hinges upon the taxpayer's cooperation in providing all the information necessary for the determination of a tax liability. This cooperation, which surely reduces the amount of resources and energy that the taxing authority must expend on the assessment of taxes, is decisive for purposes of § 523(a)(*). Massachusetts has no state law provision similar to 26 U.S.C. § 6020(a). The Massachusetts statutory scheme, however, provides for taxpayers who do not file timely returns to receive similar treatment as that set forth in the sections of the Internal Revenue Code of 1986 referenced in § 523(a)(*).

Under Massachusetts law, a late filed return is treated as a return, subject to interest and penalties arising from the untimely filing. However, when the taxpayer has failed to file a return, the commissioner is not required to give a taxpayer notice of the intention to assess a deficiency. 830 Mass.Code Regs. 62C.26.1(8). If the commissioner determines that a taxpayer has not filed a return, the commissioner may make a deficiency assessment according to his best information and belief, without issuing a notice of intention to assess, pursuant to Mass. Gen. Laws ch. 62C, § 26(d). This Massachusetts provision is similar to 26 U.S.C. § 6020(b) since the commissioner prepares the assessment without the cooperation of the taxpayer. The commissioner, after preparing the assessment, then issues a written notice of deficiency assessment to the taxpayer, as prescribed under 830 Mass.Code Regs. 62C.25.1(6)(f) through (i). If the taxpayer wishes to seek an application for abatement, which is a procedure to challenge the validity of a tax assessment, the taxpayer must file, as a prerequisite, the corresponding tax return for that period. 830 Mass.Code Regs. 62C.37.1(5)(a)(1). However, based on the information provided by the MDOR in *Gonzalez*, such a post-assessment return is not treated as a return; rather it is deemed a request for an abatement of the previous assessment.

■ Therefore, when the entirety of § 523(a)(*) is applied to the Massachusetts statutory scheme, if a tax return is never filed, then it is clear that the tax obligation

---

11. An "abatement" is "the determination by the Commissioner that an assessment exceeds the amount properly due and the adjustment by the Commissioner of the amount in the Commissioner's assessment records." 830 Mass.Code Regs. 62C.26.1(2). Mass. Gen. Laws ch. 62C, § 37 provides:

Any person aggrieved by the assessment of a tax ... may apply in writing to the com-

missioner, on a form approved by the commissioner, for an abatement thereof at any time: (1) within 3 years from the date of filing of the return ...; (2) within 2 years from the date the tax was assessed or deemed to be assessed; or (3) within 1 year from the date that the tax was paid, whichever is later....

is nondischargeable. If a return is filed late, dischargeability depends on the taxpayer's cooperation with the taxing authorities. In Massachusetts, if the debtor engages in self-assessment by filing a late return before the taxing authority assesses a deficiency (analogous to 26 U.S.C. § 6020(a)), then the tax liability may be dischargeable if the return was filed more than two years before the filing of the petition. If the Massachusetts tax authority assesses a deficiency before the debtor's self-assessment (analogous to 26 U.S.C. § 6020(b)), the debtor's tax liability will not be dischargeable. Once the taxing authority does an assessment, the taxpayer is not barred from requesting an abatement (i.e., a reduction of the assessed amount of tax liability). Nevertheless, the final amount determined, whether by a non-cooperative assessment process or an abatement process, is still not dischargeable. This view is consistent with the entirety of § 523(a)(*).

■ Accordingly, we now conclude that a late-filed, post-assessment Massachusetts state income tax return does not qualify as a return for discharge purposes. Thus, Pendergast's post-assessment returns for the tax years 2002, 2003, 2004, and 2005 do not satisfy § 523(a)(*)'s definition of a return under the applicable non-bankruptcy law of Massachusetts; he therefore cannot discharge his tax liabilities for those years.[12] Based upon the rule we articulated in *Gonzalez*, however, we conclude that Pendergast's tax obligations to the MDOR for the 2001 and 2007 tax years are discharged. Likewise, Wood's

post-assessment returns for the tax years 2000, 2001, 2002, 2004, and 2005 do not qualify as returns and his tax liabilities for those years are therefore excepted from discharge. However, because he filed his return for the tax year 2003 prior to any assessment by the MDOR (albeit late), his liability for that year falls within the scope of his discharge under the *Gonzalez* rule.

## CONCLUSION

Based on the foregoing, the judgment of the bankruptcy court in *Pendergast* is hereby **AFFIRMED** to the extent that the court held that Pendergast's tax liabilities for 2002, 2003, 2004, and 2005 were nondischargeable[13] and **REVERSED** to the extent that it determined that his liabilities for the tax years 2001 and 2007 were nondischargeable. Similarly, we **AFFIRM** the judgment of the bankruptcy court in *Wood* to the extent that the court ruled that Wood's liabilities to the MDOR for the tax years 2000, 2001, 2002, 2004, and 2005 were excepted from discharge, and **REVERSE** the judgment of the bankruptcy court to the extent that Wood's liability for the year 2003 was excepted from discharge.

---

**12.** Because Pendergast filed his tax return for 2004 post-assessment and the corresponding tax liability would be nondischargeable for this reason, we need not dwell on his failure to list his 2004 tax liability on Schedule F.

**13.** Because the bankruptcy court reached this decision without consideration of the pre- or post-assessment issue, to the extent that we affirm, that affirmance is on other grounds. *See Norris v. Lumbermen's Mut. Cas. Co.*, 881 F.2d 1144, 1151–52 (1st Cir.1989) (court of appeals may affirm on any ground supported by record).